[Nos. 45913, 46013. En Banc. August 9, 1979.]

FLORENCE R. STANDING, *Appellant,* v. THE DEPART-MENT OF LABOR AND INDUSTRIES, *Respondent.*

WILLIAM M. WAGNER, JR., *Appellant,* v. THE DEPART-MENT OF LABOR AND INDUSTRIES, *Respondent.*

464

*Douglas J. Engel* and *Dubuar & Lirhus,* for appellant Standing.

*Benson, Chadwick, Stege & Wines,* by *Thomas W. Bingham,* for appellant Wagner.

*Slade Gorton, Attorney General,* and *Charles R. Bush, Assistant,* for respondent.

STAFFORD, J.—*Standing v. Department of Labor and Industries* and *Wagner v. Department of Labor and Industries* have been consolidated for appeal. At issue in each case are deductions made by the Department which reduced benefits awarded Standing and Wagner under the Crime Victim's Compensation Act, RCW 7.68. In each the statutory award was reduced by an amount which the Department asserted to be a collateral resource deductible pursuant to RCW 7.68.130. The trial court affirmed both reductions in the basic compensation. Although the proper construction of RCW 7.68.130 is common to both cases, the different clauses involved, the factual differences between the cases and our ultimate disposition of the issue in each requires us to consider them separately.

The Crime Victim's Compensation Act (Act) is a program intended by the legislature

> to provide a method of compensating and assisting those residents of the state who are innocent victims of criminal acts and who suffer bodily injury or death as a consequence thereof.

RCW 7.68.010. The amount of compensation awarded the victim or survivors is related to the level of benefits available to an injured worker under RCW Title 51 although the Crime Victim's Compensation Act modifies the award to a certain extent. RCW 7.68.070. Further, benefit levels initially calculated by reference to Title 51 and RCW 7.68.070 are to be reduced by the amount of certain specified collateral resources available to the recipient under RCW 7.68. As provided in RCW 7.68.130:[1]

> Benefits paid pursuant to this chapter *shall be* reduced by the amount of any other public or private insurance, industrial insurance, or medical health or disability benefits available. *Payment by the department under this*

---

[1] RCW 7.68.130 was amended in 1977 to exempt the first $40,000 of life insurance proceeds. Laws of 1977, 1st Ex. Sess., ch. 302, § 8.

*chapter shall be secondary to such other insurance or benefits,* notwithstanding the provision of any contract or coverage to the contrary.

(Italics ours.) Under this statutory scheme, the recipient is assured of receiving a minimum level of compensation. That level may be met by available collateral resources, by collateral resources combined with benefits payable under the Act, or exclusively by benefits payable under the Act.

I

*Standing v. Department of Labor and Industries*

Mrs. John Standing filed a claim for benefits under the Act after her husband was killed by burglars in their home on November 21, 1975. The Department order that Mrs. Standing be paid $8,500 less the proceeds from her husband's life insurance policy ($7,700) and less Social Security burial expense benefits ($225). As a result, Mrs. Standing received $545 from the Department.

On March 25, 1976, Mrs. Standing appealed the Department's order to the Board of Industrial Insurance Appeals (Board) pursuant to RCW 7.68.110. The parties stipulated that the *sole* issue on appeal was the constitutionality of RCW 7.68.130 and .040. The parties also stipulated that if those sections were found unconstitutional, Mrs. Standing would be entitled to additional benefits of $7,700, the amount of the life insurance proceeds offset by the Department. The hearing examiner upheld the Department's calculation of the appropriate benefit level and held further that the Board, as an administrative agency, lacked jurisdiction to rule on the constitutionality of a statute. Thereafter, the Board denied Mrs. Standing's petition for review of the examiner's proposed decision and she sought judicial review in superior court pursuant to RCW 7.68.110 and RCW 34.04.130, .140. Subsequently, Mrs. Standing filed a motion for summary judgment on the ground that RCW 7.68.130 and .040 were unconstitutional. The Department also filed a motion for summary judgment. The trial court denied the Standing motion and granted the Department's

motion. Mrs. Standing appealed to the Court of Appeals which certified the matter to this court. We affirm.

In light of the stipulations referred to above, the sole issue before us is the constitutionality of the statutory scheme mandating the reduction in Mrs. Standing's benefits by the amount of proceeds from her husband's private insurance policy. Mrs. Standing first contends the collateral resource reduction employed in RCW 7.68.130 violated the Equal Protection Clause of the fourteenth amendment to the United States Constitution and the Privilege and Immunities Clause of the Washington State Constitution. Const. art. 1, § 12. In the face of similar challenges we have held the state clause usually is to be given the same interpretation as the federal clause. *Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 590 P.2d 816 (1979); *Housing Authority v. Saylors*, 87 Wn.2d 732, 557 P.2d 321 (1976).

Mrs. Standing concedes the instant case involves neither fundamental rights nor a suspect classification. Thus, the "rational basis" test is the appropriate constitutional standard by which to measure the challenged classification. A heavy burden is imposed on the party challenging legislation as violative of equal protection under the "rational basis" test. *Haddenham v. State*, 87 Wn.2d 145, 550 P.2d 9 (1976). The legislature is accorded a wide scope of discretion and its statutory enactments are presumptively valid. This presumption is particularly strong where, as here, grants of public funds are involved.

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." "The problems of government are practical ones and may justify, if they do not require, rough accommodations . . .

(Citations omitted.) *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970); *Pannell v.*

*Thompson,* 91 Wn.2d 591, 589 P.2d 1235 (1979). Merely challenging the wisdom or expediency of an enactment does not render it constitutionally infirm. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. *Haddenham v. State, supra.*

RCW 7.68.130 must satisfy two requirements under the "rational basis" test: (1) it must apply alike to all members within the designated class and (2) a reasonable ground must exist for distinguishing between those falling within the class and those falling outside. *Belancsik v. Overlake Memorial Hosp.,* 80 Wn.2d 111, 115, 492 P.2d 219 (1971).

RCW 7.68.130 clearly satisfies the first requirement in that it reduces the benefits of *all* persons who receive funds from public or private insurance sources. Mrs. Standing contends however that the statute fails to meet the second requirement. She argues that in light of the compensatory purpose of the Act it is unreasonable to reduce the benefits payable to her by the amount of her husband's life insurance because ownership of such insurance does not alone indicate a lack of financial need. From the compensatory motivation for the Act she infers that the collateral resource section was designed to exclude from coverage only those persons who possess *substantial* collateral resources, that is, those who have little or no need for such compensation. Given this "implied motivation", Mrs. Standing contends there is no rational justification for the statutory focus on the type of investment (insurance) rather than on the value of all collateral assets available to the victim regardless of their nature.

■ Mrs. Standing misconceives the relationship between the purpose and the operational characteristics of the Act. First, benefits under Washington's act, unlike certain other states' victim compensation acts, are not predicated on financial need.[2] Only those who do not qualify as victims or

---

[2] A number of states either require a determination of financial hardship before a victim qualifies for benefits or make financial need one of the relevant

as survivors are excluded from coverage. Second, although the legislature intended to assist and compensate victims of crime, it clearly evidenced a desire to insure only a basic level of recompense. The language of RCW 7.68.130 specifically declares that payment by the State is to be a *secondary* source of compensation. By serving in such a secondary capacity the Act insures that the victim will receive at least a minimum level of monetary compensation. When so viewed, RCW 7.68.130 does not operate to leave the victim or recipient with less than the total amount one would otherwise be entitled to receive under the Act.

We are not called upon to discuss the wisdom of the legislature having structured the reduction based upon the challenged collateral resources rather than on the value of all collateral resources conceivably available to the victim. However, the motivation behind the classification employed may have been an intent that a victim or survivor not be doubly compensated for the same crime, that is, not receive a windfall by collecting both private insurance proceeds and state compensation as a result of the same act. *See* Cosway, *Crime Compensation,* 49 Wash. L. Rev. 551, 556 (1974). Similarly, the legislature may have recognized the fact that proceeds from certain insurance policies are statutorily immune from execution while the unprotected nature of other assets may make them an illusory source of support for survivors of the victim. RCW 48.18.410.

Since there exists a rational basis for classifying insurance proceeds in a different manner than the victim's other assets, RCW 7.68.130 does not violate the federal and state equal protection guaranties.

---

considerations in calculating the amount of compensation to be awarded. Alas. Stat. § 18.67.080 (Supp. 1972); Cal. Gov't Code § 13963 (West Supp. 1974); Del. Code. Ann. Title 11, ch. 90, § 9007 (Michie 1974); Md. Ann. Code art. 26A, § 12(F) (Supp. 1971); Nev. Rev. Stat. § 217.180(1) (1971); N.Y. Exec. Law § 631(6) (McKinney 1972). These financial need requirements have been criticized. McAdams, *Emerging Issue: An Analysis of Victim's Compensation in America,* 8 Urban Lawyer 346, 355 (1976).

■ Mrs. Standing also challenges RCW 7.68.040, together with RCW 7.68.130, as violating due process guaranties. RCW 7.68.040 provides:

Civil actions against state and jurisdiction of courts abolished. In keeping with the intent of the legislature as set forth in RCW 7.68.010, all civil actions and civil causes of action against the state for injury or death as a consequence of a criminal act, and all jurisdiction of the courts of the state over such causes, are hereby abolished except as in this chapter provided.

This section was repealed by the legislature in 1977 (Laws of 1977, 1st Ex. Sess., ch. 302, § 11) but was in effect both at the time Mrs. Standing's husband was murdered and at the time the Superior Court granted the motion for summary judgment.

She contends the benefits available under the Act, particularly when reduced by the collateral resources of the victim, are not a reasonable substitute for extinguishing her right to sue the state. This challenge was made and rejected under similar circumstances in *Haddenham v. State, supra.* As we said therein, a plaintiff's right to sue the state for tortious conduct is a matter of legislative grace. In enacting RCW 7.68.040, the legislature expressly withdrew its consent to be sued for injury or death resulting from a criminal act. A similar challenge was made to the workmen's compensation act, on which the Crime Victim's Compensation Act is partially based. *West v. Zeibell,* 87 Wn.2d 198, 550 P.2d 522 (1976). There it was argued the absence of a quid pro quo or alternative remedy constituted a deprivation of due process. We rejected the contention.

There can be no vested right, however, in a tort action that can be brought only by virtue of a statute. *Spark-man & McLean Co. v. Govan Inv. Trust,* 78 Wn.2d 584, 587, 478 P.2d 232 (1970). The Fourteenth Amendment does not prevent a state from amending or entirely abolishing statutory remedies. *Godfrey v. State,* 84 Wn.2d 959, 962–63, 530 P.2d 630 (1975). Accordingly, the legislature is free to bar plaintiffs' right to recover for wrongful death under RCW 4.24.010 without offending due process . . . guaranties.

*West v. Zeibell, supra* at 202. RCW 7.68.040 and .130 do not deprive appellant of due process.

There being no violation of equal protection or due process, the trial court is affirmed.

## II
### *Wagner v. Department of Labor and Industries*

The parties stipulated to the following facts: Paul Wagner's father was killed as a result of a criminal act on February 2, 1975. A claim for benefits under the Crime Victim's Compensation Act was filed with the Department on Paul Wagner's behalf as a surviving child. Pursuant to RCW 7.68.070(4) the compensatory award was calculated to be $236.25 per month. Since Paul Wagner was a "surviving child" as defined by 42 U.S.C. § 402(d)(1), he received $210.99 per month under the Federal Old Age, Survivors and Disability Insurance Act (OASI). Treating these payments as "public insurance" under RCW 7.68.130, the Department offset the federal benefits against the benefits available under the Crime Victim's Compensation Act and ordered payment of the difference which amounts to $25.26 per month.

Paul Wagner appealed the award to the Board of Industrial Insurance Appeals claiming that RCW 7.68.130 does not include OASI death benefits as a collateral resource under the term "public insurance". The hearing examiner for the Board affirmed the Department's calculation as being the appropriate benefit level. Paul Wagner petitioned for judicial review of the Board's decision. Both parties submitted the issue at hearing on summary judgment. The trial court affirmed the Board, holding that the term "public insurance" was intended to include death benefits paid under OASI. Paul Wagner appealed to the Court of Appeals which certified the matter to this court. We reverse.

The sole issue is whether, by employing the term "public insurance" to designate certain kinds of collateral resources to be deducted from the compensation otherwise available

under the Act, the legislature intended to include OASI benefits. The issue is a difficult one because the term "public insurance" is not a recognized term of art and the legislature failed to provide either a definition or examples of those kinds of benefits intended to fall within the rubric of the term.

Whether OASI payments can accurately be characterized as insurance is a complicated question. Certainly OASI manifests many of the traditional characteristics of insurance, including a broad pooling mechanism and protection against long–range risks. However, OASI differs considerably from insurance in a number of fundamental ways. First, participation in the program is compulsory. Second, the rights created through participation are statutory rather than contractual and employees have no vested interest in OASI funds in the usual sense. *Flemming v. Nestor,* 363 U.S. 603, 609–10, 4 L. Ed. 2d 1435, 80 S. Ct. 1367 (1960); *Richardson v. Belcher,* 404 U.S. 78, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971); *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 503 P.2d 460, 56 A.L.R.3d 513 (1972). In fact, the statutory benefits can be changed. Third, the actuarial relationship between the contributions required and the benefits paid is inherently imprecise and fluctuating. Fourth, certain groups are heavily subsidized and thus there is a decided welfare element involved. Considered in light of these characteristics, OASI is more appropriately viewed as a broad income maintenance system, that is, it is more akin to a general welfare program than to insurance.

When called upon to accurately characterize OASI benefits, courts have found the task troublesome. The tension between the insurance aspects and the social welfare aspects of OASI have been recognized by both the United States Supreme Court and this court.

The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress' power to "spend money in aid of the 'general welfare,'" whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of

benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. But each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.

(Citation omitted.) *Flemming v. Nestor, supra* at 609–10; *Caughey v. Employment Security Dep't, supra* at 601.

The use of the term "public" to modify the type of insurance contemplated by RCW 7.68.130 does not make our determination of a legislative intent to include or exclude OASI benefits any less difficult. In our attempt to determine the meaning the legislature wished to ascribe to the word "public" we have searched the usual legislative journals, the state archives, the cases of other states and have reviewed the major texts on the subject of insurance as well as Social Security. None has been of assistance.

Depending on the characteristics chosen to ascribe to it, "public insurance", like the term "insurance" itself, can be defined in such a way as to include or exclude the OASI system. In light of this ambiguity and the lack of either statutory guidelines or legislative history to aid in our interpretation, we are disinclined to give "public insurance" a construction that will render the Crime Victim's Compensation Act virtually meaningless. OASI benefits are available upon death or disability to a huge proportion of the populace. The most recent statistical data indicates that a major portion of the state's population are potential recipients.[3] To reduce benefits available to innocent victims

---

[3]Statistical data reveals that 96 percent of the state's current work force contributes to OASI and more than one third of the state's population, *i.e.,* 1,546,000 people, now receive OASI benefits. These include retirement, survivors, dependents, and death benefits as well as certain special aid benefits.

of crime in this state by the amount of OASI payments would virtually destroy the compensatory foundation of the Act for a major segment of the population. Where doubt or uncertainty arise from words used by the legislature, the section under construction should be read in context with the entire act and a meaning ascribed to it that avoids strained or absurd consequences. *Whitehead v. Department of Social & Health Servs.*, 92 Wn.2d 265, 595 P.2d 926 (1979); *Krystad v. Lau,* 65 Wn.2d 827, 400 P.2d 72 (1965). Applying this common sense rule of statutory construction, we are unwilling to construe RCW 7.68.130 in such a manner as to destroy its application to a major segment of the state's population. Further clarification or limitation of its application must be left to the legislature.

The trial court is reversed and the Department is directed to recalculate appellant's benefits in a manner consistent with this opinion.

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied October 8, 1979.