[No. 16676-3-II.    Division Two.    July 6, 1995.]

ALOHA CARY, *Appellant*, v. ALLSTATE INSURANCE COMPANY, *Respondent*.

*James S. Smith* and *Davis, Wright, Tremaine,* for appellant.

*Douglas F. Foley* and *Bullivant Houser Bailey Pendergrass & Hoffman,* P.C. for respondent.

WIGGINS, J. — Aloha Cary seeks to recover under a homeowner's insurance policy after Arnold Bennett killed her husband Richard Cary by stabbing him with a butcher knife. Bennett was found not guilty of criminal conduct by reason of insanity. Bennett's guardian assigned to Cary all rights under a homeowner's policy issued by defendant Allstate Insurance Company (Allstate). The policy excludes liability for criminal conduct committed by an insured person while insane. We hold that this exclusion does not violate any public policy of the State of Washington and affirm the summary judgment dismissing the claim against Allstate.

The parties agree on the facts of the tragic killing. Aloha and Richard Cary learned that their friend of many years, Arnold Bennett, was ill. Richard Cary traveled to Bennett's home in Alaska and brought Bennett home to Vancouver as a houseguest. The Carys took Bennett to a doctor, who recommended psychiatric care.

The morning of the psychiatric appointment, Bennett went berserk and killed Richard Cary with a butcher knife. He then turned on Aloha Cary, who fled to an upstairs bathroom. Fortunately, a cordless telephone had been left in the bathroom and Aloha Cary was able to call the Clark County Sheriff's Department. Deputies arrived as Bennett was trying to kick the door down, and he was arrested.

Bennett was prosecuted for murder and attempted murder. The trial court found that Bennett killed Richard Cary, but that he was unable due to mental disease to perceive the nature and quality of the acts charged and to tell the difference between right and wrong. Bennett was found not guilty by reason of insanity and was committed to a mental health facility.

Cary sued Bennett for damages. Allstate, Bennett's insurance carrier, refused to indemnify or defend Bennett

and Cary settled with Bennett's guardian for limited assets and an assignment of rights against Allstate. Cary then brought this action against Allstate, which denied liability.

Allstate insured Bennett against liability for damages for bodily injury and property damage, but it excluded acts by an insured person while insane.[1] Cary argues only that the insanity exclusions, 1(b) and 2(b) set forth in the margin, violate public policy and are therefore void. Cary and Allstate contend that the exclusions are unambiguous and thus we do not address ambiguity but limit our holding to Cary's public policy argument. The public policy implications of an insanity exclusion in a liability insur-

---

[1]The relevant policy language is:

"Losses We Cover:

"Subject to the terms, limitations and conditions of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay. because of **bodily injury** or property **damage** arising from an accident and covered by this part of the policy.

". . . .

"Losses We Do Not Cover:

"1. **We** do not cover **bodily injury** or **property damage** resulting from:

"a) An act or omission intended or expected to cause **bodily injury** or **property damage**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; or

"b) An act or omission committed by an **insured person** while insane or while lacking the mental capacity to control his or her conduct or while unable to form an intent to cause **bodily injury** or **property damage**. This exclusion applies only if a reasonable person would expect some **bodily injury** or **property damage** to result from the act or omission.

"2. **We** do not cover **bodily injury** or **property damage** resulting from:

"a) A criminal act or omission; or

"b) An act or omission which is criminal in nature and committed by an **insured person** who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law".

(Emphasis in original.)

ance policy are an issue of first impression in Washington[2] and, apparently, in any jurisdiction.

The Allstate policy excludes liability for intentional acts by an insured. This exclusion is clearly valid; indeed, it would be against public policy to insure against liability for injuries caused by the intentional acts of an insured.[3] Courts have traditionally held that such exclusions do not apply to insane persons, because an insane person does not act intentionally.[4] But our Court of Appeals recently adopted the "emerging view" that an action may be intentional, even though the actor is legally criminally insane, and held that intention is an issue of fact in these cases.[5]

Perhaps in recognition of this thorny factual issue, Allstate has added to its policy the insanity exclusions at issue here. Cary asks us to strike down the exclusions on public policy grounds, arguing that the insurer can better bear the risk than the injured victim and that the exclusions defeat the intention of the insured in purchasing the policy.

■ The Washington Supreme Court has explained the proper analysis of public policy issues arising in insurance policies:

> We have said that limitations in insurance contracts which are contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability. [*Mutual of Enumclaw Ins. Co. v.*] *Wiscomb*, [97 Wn.2d 203,] at 210[, 643 P.2d 441 (1982)]; *Trinity Universal Ins. Co. v. Willrich*, 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1

---

[2]An unaddressed choice of law issue lurks in the background. Bennett's residence was in Alaska, and Allstate's policy was apparently issued for Alaska. It appears that Alaska law might properly be applied to the policy. *See Dairyland Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 41 Wn. App. 26, 701 P.2d 806, *review denied*, 104 Wn.2d 1016 (1985). Since neither party has raised the issue, we apply Washington law. CR 9(k)(4).

[3]*American Home Assur. Co. v. Cohen*, 124 Wn.2d 865, 871, 881 P.2d 1001 (1994); *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 98, 776 P.2d 123 (1989).

[4]*PEMCO v. Fitzgerald*, 65 Wn. App. 307, 311, 828 P.2d 63 (1992).

[5]65 Wn. App. at 311, 315-16.

(1942). While questioning the wisdom of certain exclusion clauses, we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 683 P.2d 180 (1984). "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." 17 C.J.S. *Contracts* § 211, at 1024 (1963).[6]

We begin our analysis by considering whether any statutes apply to this issue.[7]

Neither party has cited any statute dealing with insurance and exclusions for the actions of insane persons. We have found only one such statute, which allows a life insurance policy to limit coverage for suicide of the insured, "whether sane or insane", within two years after the date of issue of the policy.[8] Cary relies on Washington's Victim's Compensation Act, which provides benefits for the victims of criminal acts.[9] Specifically, Cary points to the definition of criminal acts, which includes acts by insane persons:

> Acts which, but for the insanity or mental irresponsibility of the perpetrator, would constitute criminal conduct are deemed to be criminal conduct within the meaning of this chapter.[10]

Neither statute supports Cary's argument that Allstate's insanity exclusions violate public policy. Indeed, both statutes mandate that actions by the sane and insane be treated identically. In any event, each statute embodies principles that do not appear to be relevant to a homeowner's liability policy.

In the absence of any statute declaring a public policy against Allstate's insanity exclusions, we turn to whether judicial decisions have condemned such exclusions or have

---

[6]*State Farm General Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984) (quoted in *American Home Assur.*, 124 Wn.2d at 873-74).

[7]*Cohen*, 124 Wn.2d at 875.

[8]RCW 48.23.260(1)(b).

[9]RCW 7.68.

[10]RCW 7.68.020(2)(d).

announced a policy against insanity exclusions. We find no such decisions, and the parties have cited none. Nor do we find that the exclusions contravene public morals.

Cary relies heavily on the 1982 decision of *Mutual of Enumclaw Ins. Co. v. Wiscomb*,[11] in which our Supreme Court invalidated a provision in an automobile liability policy excluding coverage for family members. In *Wiscomb*, the court found what is lacking in this case—a strong public policy established by a statute. Wiscomb relied on Washington's financial responsibility act, which requires persons who have caused automobile collisions to provide proof of financial responsibility for the injured and for future potential accidents.[12] The court discerned from this statute a "strong public policy of assuring protection to the innocent victims of automobile accidents . . .".[13] The court concluded that the family exclusion in Wiscomb "strikes at the heart" of the public policies underlying the financial responsibility act.[14] The court also criticized the provision because, "[t]he family or household exclusion clause is different from previous exclusions approved by our courts because it focuses not on the risk associated with who is driving the vehicle, but on which parties are injured".[15] In conclusion, the *Wiscomb* court struck the exclusion down because it violated "this state's public policy of assuring compensation to the victims of negligent and careless drivers".[16]

*Wiscomb* fails to support Cary's contention because no statute or judicial decision establishes a strong public policy that disallows Allstate's insanity exclusion. The Supreme Court has declined to extend the public policy analysis of *Wiscomb* to the family member exclusion in a

[11]97 Wn.2d 203, 643 P.2d 441 (1982).

[12]RCW 46.29.

[13]97 Wn.2d at 207.

[14]97 Wn.2d at 208.

[15]97 Wn.2d at 209.

[16]97 Wn.2d at 213.

homeowner's policy because no statute such as the financial responsibility act establishes a strong public policy of providing compensation to the victims of the acts of homeowners:

> In *Wiscomb*, we specifically stated that our starting point for analyzing public policy was with the financial responsibility act, RCW 46.29. *Wiscomb*, at 206. We said, "to the greatest extent possible without requiring mandatory insurance coverage, the Legislature has demonstrated its intended policy of providing adequate compensation to those injured through the negligent use of this state's highways." *Wiscomb*, at 207. . . .
>
> . . . .
>
> The use, operation and regulation of automobiles on public highways has been of long-standing concern to the courts and legislatures.. . . While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.[17]

In other words, the principles of *Wiscomb*, which applied to a family member exclusion in an automobile policy, do not apply to invalidate a family member exclusion in a homeowner's policy. It necessarily follows that, absent a statute establishing a strong public policy, the principles of *Wiscomb* do not apply to the insanity exclusion in a homeowner's policy.

Allstate requests attorney fees pursuant to RAP 18.9, which authorizes an appellate court to order a party or counsel who files a frivolous appeal to pay terms or compensatory damages to any other party who has been harmed by such frivolous appeal. Cases of first impression are not frivolous if they present debatable issues of

---

[17]*State Farm General Ins. Co. v. Emerson*, 102 Wn.2d at 481, 483.

substantial public importance.[18] This is such a case and we deny fees.

Affirmed.

SEINFELD, C.J., and FLEISHER, J., concur.

Review granted at 128 Wn.2d 1001 (1995).

---

[18]*Moorman v. Walker*, 54 Wn. App. 461, 466, 773 P.2d 887, *review denied*, 113 Wn.2d 1012 (1989).