922 P.2d 1335 (1996)
130 Wash.2d 335
Aloha CARY, Petitioner,
v.
ALLSTATE INSURANCE COMPANY, Respondent.
No. 63181-6.
Supreme Court of Washington, En Banc.
Argued March 26, 1996.
Decided September 26, 1996.
*1336 Davis, Wright & Tremaine, James S. Smith, Stuart C. Harris, Timothy Volpert, Darleen Darnall, Portland, OR, for petitioner.
Bullivant, Houser, Bailey & Pendergrass, Douglas Foley, Laurence Wagner, Vancouver, for respondent.
SMITH, Justice.
Petitioner Aloha Cary sought review of a decision by the Court of Appeals, Division Two, affirming a grant of summary judgment by the Clark County Superior Court in favor of Respondent Allstate Insurance Company dismissing her claim against Allstate for coverage under a homeowner's policy for a criminal act committed by a homeowner while insane. We granted review. We affirm.

QUESTION PRESENTED
The question presented in this case is whether an exclusion clause in a homeowners' insurance policy denying coverage for acts committed by an insured while insane violates public policy and thus should not be enforced.

STATEMENT OF FACTS
The facts are undisputed. In May of 1990, Aloha and Richard Cary learned their friend, Arnold Jayne Bennett, was ill. They had known him and his recently deceased wife for some years, and on prior occasions had hosted the Bennetts in their home in Vancouver, Washington. Because of their close relationship to Mr. Bennett, the Carys invited him to stay with them in an attempt to help him *1337 through his illness.[1] Mr. Cary traveled to Mr. Bennett's home in Haines, Alaska and urged Mr. Bennett to return with him to Vancouver. Mr. Bennett agreed and came to stay as a guest in the Cary home.
The Carys accompanied Mr. Bennett while he sought medical treatment. The physician who saw him recommended psychiatric care. Arrangements were made for him to see a psychiatrist the following morning. That morning, on or about May 19, 1990, Mr. Bennett lost control of his behavior in the Cary home and stabbed Richard Cary to death with a butcher knife. He then tried to kill the wife, Ms. Aloha Cary, who fled to an upstairs bathroom. There was a cordless telephone in the bathroom which Ms. Cary used to contact the Clark County Sheriff's Department. Sheriff's officers soon arrived and arrested Mr. Bennett. He was subsequently charged in the Clark County Superior Court with murder in the first degree and attempted murder in the first degree. After a hearing on stipulated facts, the trial court, the Honorable James D. Ladley, by order dated May 20, 1991 found him "not guilty by reason of insanity."
Petitioner Aloha Cary on June 28, 1990 in the Clark County Superior Court brought an action against Mr. Bennett for wrongful death and assault. Allstate Insurance Company, his homeowner's insurance carrier, refused to indemnify or defend him, basing its refusal on an exclusion clause in his homeowner's insurance policy. That clause excluded from coverage bodily injury or property damage resulting from acts committed by an insured person "while insane or while lacking the mental capacity to control his or her conduct...." The policy provided in relevant part as follows:
Losses We Do Not Cover:
1. We do not cover bodily injury or property damage resulting from:
. . . .
(b) An act or omission committed by an insured person while insane or while lacking the mental capacity to control his or her conduct or while unable to form any intent to cause bodily injury or property damage. This exclusion applies only if a reasonable person would expect some bodily injury or property damage to result from the act or omission.
2. We do not cover bodily injury or property damage resulting from:
(a) A criminal act or omission; or
(b) An act or omission which is criminal in nature and committed by an insured person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.
This exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime.[[2]]
Petitioner Cary ultimately settled her claim with Mr. Bennett's guardian for his limited assets and an assignment of rights against Allstate. She then, as assignee, brought this action in the Clark County Superior Court on April 30, 1992 against Allstate, claiming breach of the insurance contract. Allstate asserted as a defense the "insanity exclusions" in sections 1(b) and 2(b) of its policy. Both parties moved for summary judgment. The trial court, the Honorable Robert L. Harris, denied the motion of Petitioner Cary, but granted the motion of Respondent Allstate. The Court of Appeals, Division Two, affirmed.[3] Ms. Cary asked this court to review that decision.

DISCUSSION
Petitioner Cary does not contend the language in the exclusion clauses of sections 1(b) and 2(b) of the insurance contract is ambiguous, or that the clauses do not apply to the facts of this case. She argues only that these "insanity exclusions" violate public policy and *1338 are therefore void.[4]
Although Washington courts will not enforce limitations in insurance contracts which are contrary to public policy and statute, insurers are otherwise free to limit their contractual liability.[5] This court has occasionally questioned the wisdom of certain exclusion clauses, but it has rarely invoked public policy to limit or void express terms in an insurance contract[6] even when those terms seem unnecessary or harsh in their effect.[7]
Public policy is generally determined by the Legislature and established through statutory provisions.[8] The proper starting place for determining public policy, then, is applicable legislation.[9] Neither party has cited a statute specifically addressing the narrow subject of insurance contracts and exclusions for actions of insane persons. Indeed, none apparently exist. Petitioner relies only upon the victim's compensation act (VCA), codified in RCW 7.68, which provides state-funded compensation for innocent victims of criminal acts upon proper application to the Department of Labor and Industries.[10] Benefits paid under the VCA are reduced by the amount of certain specified collateral resources available to the recipient, such as other public or private insurance benefits.[11] The statute expressly states that any payments made to qualifying recipients under the act are to be secondary to such other insurance benefits.[12] The VCA provides qualifying recipients assurance of a minimum level of compensation which may be met (a) by collateral resources, (b) by collateral resources combined with benefits payable under the act, or (c) by benefits payable exclusively under the act.[13]
Petitioner Cary maintains the VCA represents a strong public policy ensuring innocent victims of violent crimes adequate compensation for their injuries irrespective of a perpetrator's mental state at the time of the offense. She points specifically to RCW 7.68.020(2)(d), which defines "criminal acts" compensable under the statute to include acts committed by "insane" persons: "Acts which, but for the insanity or mental irresponsibility of the perpetrator, would constitute criminal conduct are deemed to be criminal conduct within the meaning of this chapter."[14] Petitioner argues this provision reflects a "serious public policy concern in favor of compensation [for] innocent victims of criminal and insane acts."[15] She concludes that insanity exclusions in insurance contracts are inconsistent with this public policy because they eliminate an important source of compensation for these victims.[16] Her argument is without merit.
Petitioner Cary is correct in her assertion that the public policy behind the VCA reflects a concern that victims of violent crimes receive adequate compensation for their injuries.[17] She is also correct in pointing out *1339 that the statute does not discriminate between victims of criminal acts under ordinary circumstances and victims of criminal acts committed by insane persons.[18] Professor Richard Cosway noted:
The Act does not deal directly with the status of the criminal or alleged criminal in the compensation proceedings.... [T]here is no positive articulation of the criminal's role, if any, in crime compensation proceedings. Several provisions of the Act support the theory that the criminal offender has no status in the compensation proceedings and, indeed, he may not be affected by the proceedings.... A victim's compensation is not dependent upon a criminal conviction.

(Emphasis added).[19]
However, Petitioner does not explain how this public policy of state-provided compensation for victims of criminal acts, whether committed by sane or insane persons, in any reasonable manner affects "insanity exclusion" clauses in homeowners' insurance contracts.
While "insanity exclusions" may in some cases eliminate one source of compensation for victims of criminal acts committed by insane persons, nothing in the VCA suggests that "insanity exclusion" clauses in insurance policies are inconsistent with the act's underlying policy of state-provided compensation. The VCA establishes a state-funded program of compensation to ensure that victims of violent crimes receive a minimum level of compensation for their injuries. The act implicitly recognizes that availability of collateral resources for compensation will vary from person to person, and only augments those resources to a certain level with state funds.[20] In some cases, that level of compensation will be realized exclusively with collateral funds, and in other cases exclusively with VCA funds. But nowhere in the statutory scheme is there any indication of a legislative policy against insanity exclusion clauses in private insurance contracts.
The VCA, a public source of compensation for crime victims, does not represent a public policy against insanity exclusions in homeowners' insurance contractsa private source of compensation for crime victims. While the State may provide compensation for victims of violent criminal acts committed by insane persons, it does not necessarily follow that private insurers must provide such compensation.
Petitioner Cary also cites Mutual of Enumclaw v. Wiscomb[21] to support her claim that insanity exclusions in homeowners' insurance contracts are against public policy. In that case this court held that a provision in an automobile liability insurance policy which excluded the insured's family members from coverage violated public policy and was, therefore, invalid.[22] In reaching its conclusion, the court reasoned that Washington's financial responsibility act (FRA), RCW 46.29, was statutory evidence of a strong public policy in favor of providing compensation to victims of negligent and careless drivers.[23] The court observed:
The policy of providing compensation to victims is borne out by the financial responsibility act's focus on those who have been injured by a driver in the past and those who may be injured by [that driver] in the future. In each of the two prongs of the financial responsibility act, there is a requirement that some source of funds be made available to redress the victims of automobile accidents.[24]
The court concluded that the family member exclusion in the automobile insurance contract violated this public policy because it excluded from protection "an entire class of innocent victims for no good reason."[25] The *1340 court was particularly critical of the exclusion clause because it focused "not on the risk associated with who is driving the vehicle, but on which parties are injured."[26] Petitioner argues that the "circumstance" of this case is "directly analogous to that faced by the court in Wiscomb."[27]
Petitioner Cary's reliance on Wiscomb is misplaced. In that case, this court found in the FRA a strong public policy favoring financial compensation for injuries suffered by innocent victims of automobile accidents. The VCA similarly embodies a strong public policy favoring compensation for injuries suffered by innocent victims of crime. However, the FRA places the onus of compensation on the negligent or careless driver by requiring (1) proof of financial responsibility to the injured party and (2) proof of financial responsibility for future accidents.[28] But the VCA places the entire burden of compensation upon the State and not upon the criminal offender.[29] Thus, while both acts favor compensation for innocent victims, the VCA does not attempt to influence availability of collateral resources for victim compensation as the FRA does. This fundamental difference mitigates against concluding the VCA expresses a public policy requiring homeowners' insurance contracts to provide compensation for criminal acts committed by insane persons.
In general, this court has determined exclusion clauses in insurance contracts are contrary to public policy in only two areas: (1) the FRA, RCW 46.29, and (2) the underinsured motorist (UIM), statute RCW 48.22.030.[30] In both contexts, this court has found a strong legislative expression of public policy favoring compensation for innocent victims of automobile accidents.[31] However, we have not extended our holdings in FRA and UIM cases to other areas. For example, in State Farm Ins. Co. v. Emerson we determined a family exclusion clause in a homeowners' liability insurance contract was not void as against public policy.[32] We did extend our holding in Wiscomb "beyond the context of automobile insurance," reasoning that the public policy expressed in the FRA and relied upon in Wiscomb did not impact financial compensation by negligent homeowners:[33]
The additional rationales in Wiscomb for overriding family exclusion clauses were not independent of the public policy evidenced by the financial responsibility act. Those rationales, in the context of automobile insurance, are readily distinguishable when applied to homeowners insurance....
The use, operation and regulation of automobiles on public highways has been of long-standing concern to the courts and legislatures.... While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.

(Emphasis added).[34]
This court will not invoke public policy to override an otherwise proper insurance *1341 contract in the absence of an expression of public policy from either the Legislature or a prior court decision.[35] Petitioner, citing only the VCA and this court's decision in Mutual of Enumclaw v. Wiscomb, has not overcome this position.
Petitioner Cary makes other claims in support of her contention that "insanity exclusions" in homeowners' insurance contracts violate public policy. She argues that an exclusion for acts committed by an insured while insane will not serve as a deterrent to criminal conduct as does an exclusion based upon intentional conduct.[36] She reasons that the fact of insurance coverage will have "absolutely no impact on the actions of the insane."[37] Petitioner also argues that a cost benefit analysis illustrates that "insurance companies are in a far better position to evaluate, calculate and measure the risk caused by [insane] conduct than are private individuals" and set premiums based on that risk accordingly.[38] She further contends that "insanity exclusions" are unfair because they are not the result of fair bargaining, and that they defeat the purpose of purchasing insurance by excluding from coverage harm caused by unintentional and unexpected acts.[39] Petitioner adds to this litany of assertions the claim that "insanity exclusions" benefit only insurance companies at the expense of victims and society.[40]
While these claims are at least worthy of attention, they nevertheless do not rise to the level of public policy. "The term `public policy,'... embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel."[41] "Absent a prior expression of public policy from either the Legislature or prior court decisions," this court "shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful."[42] Petitioner Cary has not established that public policy is offended by insanity exclusion clauses in homeowners' insurance contracts. We therefore reject these claims and conclude that an exclusion clause in a homeowners' insurance policy denying coverage for acts committed by an insured while insane does not violate public policy and thus may be enforced.[43]
Respondent Allstate requests attorney fees under RAP 18.9, arguing that Petitioner's appeal is frivolous.[44] "The rules of appellate procedure permit an award of attorney fees to a prevailing respondent in a frivolous appeal."[45]
"An appeal is frivolous when there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of merit that there was no reasonable possibility of reversal."[46] Any doubts should be resolved in favor of the *1342 appellant.[47] As the Court of Appeals noted in rejecting respondent's request to that court for attorney fees, this is a case of first impression which presents "debatable issues of substantial public importance."[48] This appeal is not frivolous. Respondent is thus not entitled to attorney fees under RAP 18.9.
Petitioner Cary requests attorney fees under RAP 18.1 and this court's decision in Olympic Steamship Co., Inc. v. Centennial Ins. Co.[49] In Olympic Steamship, this court granted an insured the right "to recoup attorney fees ... it incurs because an insurer refuses to defend or pay the justified action or claim of the insured...."[50] The court held that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract ..." and awarded appellant attorney fees under RAP 18.1.[51] Petitioner's claim against respondent was not a "justified claim" and Respondent did not deny her the "full benefit" of her assigned rights under Mr. Bennett's insurance contract. Respondent Allstate properly denied liability under the insurance policy because the "insanity exclusions" applied. Under these circumstances, Petitioner is not entitled to attorney fees under RAP 18.1.

SUMMARY AND CONCLUSIONS
While this court will not enforce limitations in insurance contracts which are contrary to public policy, insurers are otherwise free to limit their contractual liability. Absent a clear expression of public policy from either the Legislature or prior court decisions, the court will not invoke public policy to void terms in an insurance contract which limit the insurer's liability, regardless how harsh or unnecessary those terms may appear.
Petitioner has presented no evidence or authority indicating a public policy against exclusion clauses in homeowners' insurance contracts which deny liability for criminal acts committed by an insured while insane. The victims compensation act, RCW 7.68, cited by Petitioner, establishes a public policy in favor of state-funded compensation for innocent victims of violent acts, whether committed by sane or insane persons. However, that act does not establish a public policy requiring private insurers to compensate victims of violent criminal acts committed by insureds while insane. In the absence of an express public policy from either the Legislature or prior court decisions, the "insanity exclusion" in Arnold Bennett's homeowners' insurance policy with Allstate Insurance Company properly excludes coverage in this case.
Under RAP 18.9 appellate courts may award attorney fees to a prevailing party when the appeal is frivolous. This case presents debatable issues which are not frivolous. Although the prevailing party, Respondent is not entitled to attorney fees on this appeal.
An insured may be entitled to attorney fees under RAP 18.1 and this court's decision in Olympic Steamship when an insurer compels the insured to assume the burden of legal action to obtain the full benefit of the insurance policy on a justifiable claim. Petitioner Cary's claim was not justifiable. The insanity exclusions in the Allstate insurance policy properly excluded coverage.
We affirm the decision of the Court of Appeals, Division Two, affirming the summary judgment granted by the Clark County Superior Court in favor of Allstate Insurance Company. We deny the requests of both parties for attorney fees.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
*1343 TALMADGE, Justice (concurring).
I agree with the majority's analysis in this case, but write separately to explain why RCW 48.30.300(1), which prohibits discrimination in insurance contracts based on the presence of any sensory, mental, or physical handicap of the insured or prospective insured, is inapplicable here.
RCW 48.30.300 states:
Notwithstanding any provision contained in Title 48 RCW to the contrary:
(1) No person or entity engaged in the business of insurance in this state shall refuse to issue any contract of insurance or cancel or decline to renew such contract because of the sex or marital status, or the presence of any sensory, mental, or physical handicap of the insured or prospective insured. The amount of benefits payable, or any term, rate, condition, or type of coverage shall not be restricted, modified, excluded, increased or reduced on the basis of the sex or marital status, or be restricted, modified, excluded or reduced on the basis of the presence of any sensory, mental, or physical handicap of the insured or prospective insured. Subject to the provisions of subsection (2) of this section these provisions shall not prohibit fair discrimination on the basis of sex, or marital status, or the presence of any sensory, mental, or physical handicap when bona fide statistical differences in risk or exposure have been substantiated.
While RCW 48.30.300(1) prohibits exclusions from insurance coverage based on the presence of a mental handicap, our inquiry does not end there.
The Allstate policy in this case excludes coverage for bodily injury or property damage resulting both from acts or omissions of an insured while mentally incapacitated (exclusion 1) or from a criminal act, or an act that would be criminal, but was committed by an insured who lacked the mental capacity to appreciate the wrongfulness of the act, to conform his or her conduct to the requirements of the law, or to form the necessary intent (exclusion 2).
Exclusions in liability policies for criminal conduct or other intentional conduct are generally enforceable. 7A John Alan Appleman, Insurance Law and Practice § 4501.09, at 267 (Berdal rev. ed. 1979) ("intentional injuries, generally, are not covered. Otherwise a liability policy could be used as a license to wreak havoc at will."). Rodriguez v. Williams, 107 Wash.2d 381, 729 P.2d 627 (1986); New York Underwriters Ins. Co. v. Doty, 58 Wash.App. 546, 794 P.2d 521 (1990) (defendant who was found sane at time of crime and made an Afford plea was held to have intended injury for purposes of insurance exclusion for intentional acts).
Exclusion 2 in the Allstate policy relates not to the mental handicap of the insured, but to the conduct of the insured, without regard to the absence or presence of the mental handicap; the policy excludes coverage for criminal acts, whether committed by a person sane or insane. See State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 687 P.2d 1139 (1984) (family exclusion applying equally to all family members including spouse, did not discriminate based on marital status). Therefore, exclusion 2 in the Allstate policy would not violate RCW 48.30.300, and the exclusion precludes coverage for Aloha Cary.
NOTES
[1] The nature of Mr. Bennett's illness is not indicated in the record.
[2] Clerk's Papers at 60-61.
[3] Cary v. Allstate Ins. Co., 78 Wash.App. 434, 897 P.2d 409, review granted, 128 Wash.2d 1001, 907 P.2d 297 (1995).
[4] The Court of Appeals observed in a footnote that a choice of law issue "lurks in background" because Mr. Bennett's residence was in Alaska and the policy was "apparently issued for Alaska." Cary, 78 Wash.App. at 437 n. 2, 897 P.2d 409. It resolved the issue by applying Washington law under CR 9(k)(4). Id. Because neither party has raised the issue before this court, we also apply Washington law.
[5] State Farm General Ins. Co. v. Emerson, 102 Wash.2d 477, 481, 687 P.2d 1139 (1984).
[6] Id.
[7] Id. at 483, 687 P.2d 1139.
[8] American Home Assur. Co. v. Cohen, 124 Wash.2d 865, 875, 881 P.2d 1001 (1994).
[9] Id.
[10] RCW 7.68.
[11] RCW 7.68.130.
[12] Id.
[13] Standing v. Department of Labor & Indus., 92 Wash.2d 463, 466, 598 P.2d 725 (1979).
[14] RCW 7.68.020(2)(d).
[15] Pet's Br. at 9.
[16] Pet. for Review at 7.
[17] See Laws of 1973, 1st Ex.Sess., ch. 122, § 1 ("It is the intent of the legislature of the state of Washington to provide a method of compensating and assisting those residents of the state who are innocent victims of criminal acts and who suffer bodily injury or death as a consequence thereof."), repealed by Laws of 1989, 1st Ex.Sess., ch. 5, § 14.
[18] See RCW 7.68.020(2)(d).
[19] Richard Cosway, Crime Compensation, 49 WASH.L.REV. 551, 557 (1974).
[20] See RCW 7.68.130; see also Standing, 92 Wash.2d at 466, 598 P.2d 725.
[21] Mutual of Enumclaw Ins. Co. v. Wiscomb, 97 Wash.2d 203, 643 P.2d 441 (1982).
[22] Id. at 213, 643 P.2d 441.
[23] Id. at 206, 643 P.2d 441.
[24] Id. at 207, 643 P.2d 441.
[25] Id. at 208, 643 P.2d 441.
[26] Id. at 209, 643 P.2d 441.
[27] Pet's Br. at 12.
[28] See RCW 46.29.060 and RCW 46.29.250; see also Wiscomb, 97 Wash.2d at 206-07, 643 P.2d 441.
[29] The VCA provides that any person who has committed a criminal act which resulted in injury compensated under the statute may be required to reimburse the Department of Labor and Industries. See RCW 7.68.120. However, compensation made to qualifying persons under the statute in no way depends on this reimbursement. The primary source of compensation under the VCA is public funds.
[30] American Home Assur., 124 Wash.2d at 874, 881 P.2d 1001.
[31] Id. (citing Wiscomb, 97 Wash.2d 203, 643 P.2d 441; Brown v. Snohomish County Physicians Corp., 120 Wash.2d 747, 756-57, 845 P.2d 334 (1993); Schab v. State Farm Mut. Auto. Ins. Co., 41 Wash.App. 418, 423, 704 P.2d 621 (1985)).
[32] State Farm Ins. Co. v. Emerson, 102 Wash.2d at 486, 687 P.2d 1139.
[33] Id. at 482-83, 687 P.2d 1139.
[34] Id.
[35] Id. at 483, 687 P.2d 1139.
[36] Pet's Br. at 13.
[37] Id.
[38] Id. at 14.
[39] Id. at 15-16.
[40] Id. at 15.
[41] State Farm Ins. Co. v. Emerson, 102 Wash.2d at 483, 687 P.2d 1139 (citations omitted) (quoting LaPoint v. Richards, 66 Wash.2d 585, 594-95, 403 P.2d 889 (1965)).
[42] Id.
[43] Petitioner also cites Public Employees Mutual Ins. Co. v. Fitzgerald, 65 Wash.App. 307, 828 P.2d 63 (1992), in support of her claim. Pet's Br. at 17. In that case, the Court of Appeals, Division Two, held that an insured's acquittal by reason of insanity does not preclude a finding that her actions were intentional for purposes of an "intended acts" exclusion clause in a homeowners' insurance policy, but instead presents a question of fact. Fitzgerald at 315-16, 828 P.2d 63. However, as Petitioner concedes, Fitzgerald involved a different issue from the one presented in this case. Pet's Br. at 18. That case involved exclusions for intentional acts committed by the insured, while this case involves exclusions for acts committed by an insured while insane. There is no issue of intent in this case.
[44] Resp't's Br. at 24.
[45] Mahoney v. Shinpoch, 107 Wash.2d 679, 691, 732 P.2d 510 (1987).
[46] Id.
[47] Id. at 692, 732 P.2d 510.
[48] Cary, 78 Wash.App. at 440-41, 897 P.2d 409.
[49] Pet's Supplemental Br. at 1; Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991).
[50] Olympic Steamship, 117 Wash.2d at 52, 811 P.2d 673.
[51] Id. at 53, 811 P.2d 673.