[No. 21759.  *En Banc.*  January 2, 1930.]

NATIONAL SURETY COMPANY, *Respondent,* v. W. E. PETERSEN *et al., Appellants.*[1]

*John F. Dore* and *F. C. Reagan,* for appellants.
*Caldwell & Lycette,* for respondents.

TOLMAN, J.—This is an action on a promissory note, tried to the court sitting without a jury, resulting in a judgment in favor of the plaintiff for the full amount demanded, from which judgment the defendants have appealed.

The evidence is without substantial conflict, and shows rather conclusively that appellant W. E. Peter-

[1] Reported in 283 Pac. 668.

sen purchased from the Sands Motor Company a Studebaker automobile, making a cash payment, in part, and, for the balance of the purchase price, gave a promissory note for $1,824.60 secured by chattel mortgage upon the car purchased. The mortgage, by its terms, required the mortgagor to keep the automobile insured against fire, collision and theft in an amount equal to the balance due the mortgagee, with loss payable to the mortgagee and the policies to be deposited with it. It was further provided that, in the event of the failure of the mortgagor to so insure, the mortgagee might procure such insurance, add the cost thereof to the principal sum of the note secured by the mortgage, which added amount should become immediately due and payable. Although there was no provision in the mortgage with reference to confiscation insurance, by agreement between the parties, or at least with the consent of the mortgagors, the Sands Motor Company, at the time of the execution of the note and mortgage, secured a policy of insurance against confiscation from the National Surety Company. The premium on this policy was added to the price of the car and was covered either by the cash payment then made by the appellant or was made a part of the note evidencing the balance to be paid. Some time thereafter, the automobile was confiscated, and the National Surety Company paid to the Sands Motor Company on the policy against confiscation the sum of $1,083.40, which amount was credited on the ledger of the Motor Company to the Petersen account and which paid that account *pro tanto*. Thereupon, the Sands Motor Company assigned the note and mortgage to the National Surety Company, and this action was instituted on the note to collect, according to its terms, without any credit for the amount paid under the policy against confiscation.

Respondent insists that, under the peculiar conditions here involved, the pleadings are of unusual importance, and bases considerable of its argument upon the pleadings. Under our liberal rule with reference to amending to conform to the proof and considering as amended to conform to the proof, we think the facts admitted by the pleadings and those established by the evidence are of equal importance. The complaint was in the usual form, alleging the execution and nonpayment of the note and its assignment to respondent. The execution was not denied, the assignment was denied by answer and a special defense was pleaded which, in effect, was a plea of payment.

We think it must be conceded that the Sands Motor Company procured the insurance against confiscation with the consent of Petersen; that Petersen paid the premium on the policy; that respondent knew that the premium was so paid by Petersen; that the proceeds of the confiscation policy, when paid to the Sands Motor Company, were credited to Petersen's account; and, if credited upon the note, left a balance due thereon at that time of $274.60, and no more.

No evidence appears in the record offered by either side as to why or under what conditions the automobile was confiscated, and in the final analysis, the only question here at issue is, was the burden of proof upon the respondent to establish that the automobile was confiscated because of some wrong on the part of Petersen, or, was the burden of proof upon appellants to establish that the confiscation took place without their fault?

Appellant relies upon the well-settled rule of law that, where insurance is taken out at the expense of, and for the benefit of, the mortgagor, he, the mortgagor, has the right, in case of loss, to have the pro-

ceeds of the policy applied for his benefit toward the discharge of the debt, citing *Stebbins v. Westchester Fire Insurance Co.*, 115 Wash. 623, 197 Pac. 913, 14 R. C. L. 1367; *Robbins v. Milwaukee Mechanics Insurance Co.*, 102 Wash. 539, 173 Pac. 634; and many cases from other jurisdictions among which are *Leyden v. Lawrence*, 79 N. J. Eq. 113, 81 Atl. 121; *Commercial Credit Co. v. Eisenhour*, 28 Ariz. 112, 236 Pac. 126; *Pendleton v. Elliott*, 67 Mich. 496, 35 N. W. 97; *Waring v. Loder*, 53 N. Y. 581; *Traders' Insurance Co. v. Race*, 142 Ill. 338, 31 N. E. 392; and *Burton-Lingo Co. v. Patton*, 15 N. M. 304, 107 Pac. 679, 27 L. R. A. (N. S.) 420.

Respondent does not dispute this rule of law, but, aside from its argument based upon the pleadings, seems to assert that, under a policy against confiscation, the fault of the owner or the one entitled to possession must be presumed in all cases where confiscation has taken place, or, in any event, that the burden is upon him to establish by competent proof that he was without fault.

Confiscation insurance does not differ in principle from other insurance, and one seeking the benefit of such insurance after loss, if he caused the loss, cannot recover. But nothing in the policy or in the law applicable thereto is called to our attention which in any wise changes the well-settled general rule that wrongdoing is never presumed, but must always be established by proof. So here, if confiscation might take place without wrongdoing or fault on the part of appellants, in the absence of any proof, the law will presume that it did so take place.

The Federal statute treats the thing as the offender, and if the thing is used unlawfully without the knowledge of the owner, it may be confiscated, notwithstanding the owner is without fault. *Goldsmith-Grant Co.*

*v. United States,* 254 U. S. 505; *United States v. Stowell,* 133 U. S. 1; *United States v. Mincey,* 254 Fed. 287; *Logan v. United States,* 260 Fed. 746, and *United States v. One Saxon Automobile,* 257 Fed. 251. A reading of these cases reveals sufficient instances of confiscation without wrongdoing or knowledge of wrongdoing on the part of the owner, and no further demonstration seems necessary. We conclude that the burden was on respondent to prove by competent evidence that the confiscation took place by reason of some act or fault on the part of the appellants, and no such proof having been offered, the judgment should have been for $274.60 with interest thereon, only.

The judgment is reversed with directions to enter a judgment in harmony with the views herein expressed.

PARKER, BEALS, FRENCH, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—In their affirmative answer, appellants alleged that, at the time they purchased the automobile from Sands Motor Company, *they entered into a contract with respondent whereby respondent agreed, in the event the automobile should be confiscated,* respondent would pay to Sands Motor Company the balance due on the note and mortgage mentioned in paragraph IV of the complaint; that thereafter the automobile was seized and confiscated by the United States of America; that when the car was seized and confiscated by the United States, respondent then, *under the terms of its contract with appellants,* became bound to pay to the Sands Motor Company the balance due on the note and mortgage; and that thereafter respondent, under the terms of the contract so alleged, did pay the balance due on the note and mortgage. It was further alleged that Sands Motor Company accepted from respondent the money paid in full payment of the note and mortgage; that,

*under the terms of its contract with appellants, re-*
*spondent was obligated to pay Sands Motor Company*
*the money so paid without any recourse on appellants*
(All italics mine). It is further alleged that, at the
time the assignment was made to respondent, the note
and mortgage were paid and discharged by the pay-
ment of the balance due on the note in accordance with
the terms of the contract alleged in the answer; that
respondent knew that the note and mortgage were paid
when they were assigned to it.

The allegation of the affirmative answer that the
automobile was seized and confiscated by the United
States of America was admitted by the reply of re-
spondent and all the other allegations denied. As to
all those affirmative allegations made by appellants
and not admitted, the burden of proof was certainly
upon appellants. Appellants introduced no evidence.
If the car was confiscated by the United States with-
out fault of theirs, the burden was certainly upon them
to prove it, which they did not attempt. The presump-
tion therefore is contrary to what the majority say;
and is that it was because of the criminal act of one
of them.

There is no evidence in support of the affirmative
answer that the insurance item of $139.44 was paid for
confiscation insurance rather than for the fire, collision
and theft insurance required by the mortgage.

The question here is not answered by the principles
involved in cases cited in the majority opinion. No
decision found up to now precisely answers this im-
portant question. The question here involved is
whether one may be protected by a policy of indemnity
taken out by another, even at the expense of the in-
sured, against financial loss incurred by the insured
in the use of the property in presumptively criminal

activities by reason of which the property is confiscated.

It is true that insurance policies are in general to be construed strictly against the companies which issued them; but the rule is not so broad as to compel a construction which would force such companies to save harmless those of their policy holders who suffer financial loss on account of having committed crimes, even though the policy does not except criminal acts; for such an exception, even though expressed, would be contrary to good public policy and void. A contrary holding would permit such an insurance policy holder, not only to take advantage of his own wrong, but to profit financially from his own criminal act. *Messersmith v. American Fidelity Co.,* 101 Misc. Rep. 598, 167 N. Y. Supp. 579.

There the court held that a policy without any exception to indemnify insured against loss from use of his automobile, did not furnish security for loss incurred by insured where his automobile was operated with his consent by a minor under eighteen in violation of the state law.

If such an infraction of law as was involved in that case would void a policy as to the insured, how much more should it void a policy as to the insured, even conceding that appellant in this case was *the insured* and paid for the insurance, where he, himself, so violated the law with the automobile while it was in his possession and control as to cause or permit it to be confiscated by the United States?

The court of appeals of New York has also recently held in *Ocean Accident & Guarantee Corporation v. Hooker Electro-Chemical Co.,* 240 N. Y. 37, 147 N. E. 351, that an insurer who pays claims against the insured for damages caused by default or wrongdoing of a third party is entitled to be subrogated to the

rights of the insured against such third party; that the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries; that an insurer, as subrogee of the insured, acquires rights against third persons causing loss, which, as between insurer and insured, are beyond the power of cancellation and destruction by the insured.

While there is not a third party constituting a wrongdoer in this case, but the wrongdoer was the insured himself, it seems that the principles applied by the court in that case should apply with much greater force in a case where the insured himself is the wrongdoer.

It is also generally accepted as the law that

"One who has indemnified another in pursuance of his obligation so to do succeeds to, and is entitled to, a cession of all the means of redress held by the party indemnified against the party who has occasioned the loss." 25 R. C. L. 1372, § 55.

The supreme court of Oregon has also held in *American Cent. Ins. Co. v. Weller,* 106 Ore. 494, 212 Pac. 803, that on payment of a loss an insurer, as a general rule, acquires the legal right to be subrogated *pro tanto* to any right of action which the insured may have against any third person whose wrongful act or neglect caused the loss.

The supreme court of Kansas has held in *First National Bank of Elk City v. Springfield Fire & Marine Ins. Co.,* 104 Kan. 278, 178 Pac. 413, that, in an action on an insurance policy, the insurer, upon satisfaction of a judgment against it in favor of a mortgagee under a loss payable clause of the policy, is entitled to subrogation to the claims of the mortgagee, where it has a valid defense as against the insured.

The test should be, could appellant maintain an action against respondent upon such policy for the value of the car at the time it was confiscated, appellant

himself having brought about the confiscation, presumably by his own criminal act? Equity, good morals and good law, emphatically say not.

Confiscation bonds do not contravene public policy, are not forbidden by law, and they do not undertake to indemnify the assured against damages resulting to him because of his violation of the law, or by anyone else with his knowledge or permission. *They are intended for the protection of the vendor. Fidelity & Deposit Co. of Maryland v. Moore*, 3 Fed. (2d) 652.

The judgment should be affirmed.

For the foregoing reasons, I dissent.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur with HOLCOMB, J.