999 P.2d 29 (2000)
140 Wash.2d 659
Jose MENDOZA and Elisa Mendoza, husband and wife, Respondents,
v.
Ramiro RIVERA-CHAVEZ and Jane Doe Chavez, husband and wife, Defendants,
Leader National Insurance, Petitioner.
Leader National Insurance, a foreign corporation, doing business in the State of Washington, Petitioner,
v.
Ramiro Rivera-Chavez, Respondent,
Jose Mendoza and Elisa Mendoza, husband and wife; Salvador Ruiz; Alejendro M. Munos-Mancinas; Javier S. Beltron and the Heirs or Representatives of the Estate of Evelio Ochoa Ramirez,
Respondents.
No. 66246-1.
Supreme Court of Washington.
Argued February 15, 2000.
Decided May 18, 2000.
Debra Stephens, Bryan Patrick Harnetiaux, Harbaugh & Bloom, Gary Neil Bloom, Spokane, Amicus Curiae on Behalf of Washington State Lawyers Association.
Weeks & Skala, James Daniel Maloney, Roland Louis Skala, Yamika, for Petitioner.
Roy & Boutillier, Theodore Archie Roy, Yakima, Roy & Boutillier, Kevin Michael *30 Roy, Selah, D. Bruce Morgan, Newcastle, for Respondent.
SANDERS, J.
We are asked whether a clause in an automobile insurance policy which excludes coverage for use of the vehicle "in the commission of any felony" is ambiguous or void as against public policy. We hold, following Mutual of Enumclaw Ins. Co. v. Wiscomb, 97 Wash.2d 203, 643 P.2d 441 (1982), the clause is void as against public policy. Accordingly, we affirm the Court of Appeals and remand.

I.

Facts
Eliza and Jose Mendoza were seriously injured when their Nissan pickup was in a head on collision with a Subaru station wagon that had crossed the centerline of the road. One of the passengers in the Subaru died as a result of the accident. The Subaru driver, Ramiro Rivera-Chavez, admitted he was intoxicated at the time of the accident and pleaded guilty to one count each of vehicular assault and vehicular homicide, both felonies.
The Mendozas brought a personal injury lawsuit against Rivera-Chavez that was settled by entry of judgment for $150,000. The Mendozas then obtained a writ of garnishment directed to Leader National Insurance Company (Leader), one of Rivera-Chavez's insurers at the time of the accident. In a separate suit, Leader sought a declaratory judgment to determine coverage under its policy as to claims by the Mendozas and the other passengers. The garnishment proceedings and Leader's declaratory action were consolidated. Cross motions for summary judgment were brought. Leader argued that both the felony exclusion and the migrant workers' exclusion in the insurance policy precluded coverage. The trial court ordered summary judgment in favor of Leader denying coverage on the basis of the migrant workers exclusion only, and awarded Leader reasonable attorney fees pursuant to RCW 6.27.230 because it prevailed in a controverted garnishment proceeding. The Mendozas appealed and Leader cross-appealed the denial of summary judgment on the basis of the felony exclusion. The Court of Appeals reversed the trial court's grant of summary judgment to Leader on the migrant workers exclusion, affirmed the denial of summary judgment to Leader on the felony exclusion and remanded the case for trial. Mendoza v. Rivera-Chavez, 88 Wash.App. 261, 273, 945 P.2d 232 (1997). Leader then petitioned this court for review, which was granted only on the validity of the insurance policy exclusion for automobiles used in the commission of a felony. 135 Wash.2d 1005, 959 P.2d 125 (1998).

II.

Standard of Review
The issue before this court is whether Leader is entitled to summary judgment on the felony exclusion issue. Although summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when all facts and inferences are resolved in favor of the nonmoving party, CR 56(c), Failor's Pharmacy v. Department of Soc. & Health Servs., 125 Wash.2d 488, 493, 886 P.2d 147 (1994), the question here presented, however, is one of law, not fact.

III.

Analysis
The Mendozas ask us to strike down the felony exclusion in Leader's insurance policy because it violates public policy. We agree the Leader exclusion is broad enough to encompass felonies (such as vehicular homicide and vehicular assault) which depend on the extent of injury to the victim of the accident rather than the risk to the insurer. Therefore, following Wiscomb, 97 Wash.2d 203, 643 P.2d 441, we hold the Leader felony exclusion to be void as against public policy and need not address claims of ambiguity.
It is well established that insurance companies may limit their liability unless the limitation is contrary to public policy. Brown v. Snohomish County Physicians Corp., 120 Wash.2d 747, 753, 845 P.2d 334 (1993). "Public policy" is a nebulous term *31 and on the whole, courts are reluctant to hold that a clause in an insurance policy is in violation of public policy. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 876 n. 1, 784 P.2d 507, 87 A.L.R.4th 405 (1990). In order to give more meaning to the term, it has been held that a contract will not violate public policy unless it is "`prohibited by statute, condemned by judicial decision, or contrary to the public morals.'" State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 481, 687 P.2d 1139 (1984) (quoting 17 C.J.S. Contracts § 211, at 1024 (1963)).
This court has been careful to look to a particular statute to guide it in defining public policy. We will not make public policy from whole cloth. For example, although the courts have found relevant statutes in the area of motor vehicle insurance (the financial responsibility act (FRA) (RCW 46.29) and the underinsured motorist statute (RCW 48.22.030)), they have failed to find similar statutes relating to homeowners' insurance. As a result, "family members" exclusion clauses which have been held to violate public policy based on the FRA with respect to automobile insurance (Wiscomb, 97 Wash.2d 203, 643 P.2d 441) have been held not to violate public policy in the context of homeowners insurance (Emerson, 102 Wash.2d 477, 687 P.2d 1139; see also Cary v. Allstate Ins. Co., 78 Wash.App. 434, 897 P.2d 409 (1995), aff'd, 130 Wash.2d 335, 922 P.2d 1335 (1996)).
In the present case, the relevant statutes for determining public policy are the FRA and the mandatory liability insurance act (RCW 46.30).
The FRA requires a driver to provide proof of insurance or financial security after an accident has occurred failing which the driver's license will be suspended (RCW 46.29.060-46.29.240) and, in certain situations, requires a driver who has had his or her license suspended or revoked to prove financial responsibility for the future before the license is renewed (RCW 46.29.250-46.29.440). Schermer states that:
the function of the security suspension provisions [which are implicated following an accident] is to pressure an uninsured or financially irresponsible motorist into paying damages arising out of a past accident, while the function of the certification provisions [for proof of future responsibility] is to secure the public against damages which may arise out of future accidents.
2 Irvin E. Schermer, Automobile Liability Insurance 3D, § 20.01, at 20-3 (1995).
The FRA is aimed at protecting the public from motorists who are unable to compensate the victims of accidents. Washington courts have recognized this strong public policy behind the statute. LaPoint v. Richards, 66 Wash.2d 585, 590, 403 P.2d 889 (1965) ("Manifestly the purpose of the Financial Responsibility Act is for the protection of the public."); Emerson, 102 Wash.2d at 482, 687 P.2d 1139 ("The focus on innocent victims in automobile exclusion clauses is improper because the purpose of the financial responsibility act and uninsured motorist statute is to protect them."); Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 112, 795 P.2d 126 (1990) ("We began with the premise that the financial responsibility act, RCW 46.29, states a public policy in favor of full compensation for accident victims.").
Leader strenuously argues the FRA is no longer a source of public policy since the passage of the mandatory liability insurance act (RCW 46.30.010-46.30.901), which took effect in 1990. Pet. for Review at 18-19; Supplemental Br. of Pet. at 4-6. Leader focuses on a provision in the FRA which states, "This chapter shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state" (RCW 46.29.510(1)), and points to the provision of the mandatory liability insurance act which states that it is not intended to "modify, amend, or invalidate existing insurance contract terms, conditions, limitations, or exclusions" (RCW 46.30.010). However, this argument loses the forest for the trees. The relationship between the two statutes is one of harmony rather than discord: the public policy of protecting victims from careless drivers is reinforced rather than marred by the mandatory liability insurance act, which specifically states,
*32 It is a privilege granted by the state to operate a motor vehicle upon the highways of this state. The legislature recognizes the threat that uninsured drivers are to the people of the state. In order to alleviate the threat posed by uninsured drivers it is the intent of the legislature to require that all persons driving vehicles registered in this state satisfy the financial responsibility requirements of this chapter.
RCW 46.30.010.
Indeed, we have previously agreed mandatory insurance would strengthen the policy behind the FRA. Wiscomb, 97 Wash.2d at 207, 643 P.2d 441 ("Thus, to the greatest extent possible without requiring mandatory insurance coverage, the Legislature has demonstrated its intended policy...."). Therefore, contrary to Leader's argument, both the FRA and the mandatory liability insurance act express a strong public policy in favor of compensating the victims of road accidents.
In considering the public policy of the FRA, we are bound by Wiscomb, 97 Wash.2d 203, 643 P.2d 441. In Wiscomb the court considered two consolidated cases, each involving a wife's claim against her husband's automobile insurance company following an accident in which the wife was injured. The insurance policies in question had clauses excluding coverage for injuries to family or household members. Id. at 205, 643 P.2d 441. The court held that the exclusion clauses violated the public policy that victims of negligent driving should be compensated, as manifested in the FRA. The court stated, "Quite simply, the statute creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others." Id. at 206, 643 P.2d 441. The court found that the family members exclusion clauses struck "at the heart" of that public policy, id. at 208, 643 P.2d 441, because the exclusions focused upon who was injured and not upon the risk to the insurance company presented by the decision to insure a particular person against particular kinds of conduct. Id. at 209, 643 P.2d 441. See also Tissell, 115 Wash.2d at 112, 795 P.2d 126 (family member exclusion clause of underinsured motorist policy void as against public policy).
Wiscomb is on point with the case currently before us. In the present case, the insurance policy excludes liability for use of the vehicle in "any felony," which includes vehicular homicide and vehicular assault. These crimes are both defined with reference to the injury sustained by the victim. RCW 46.61.520(1) ("When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if...."); RCW 46.61.522(2) (referring to driving which causes "serious bodily injury," which is defined as "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body"). As a result, the exclusion at issue in this case is not based on the conduct of the driver but on the injuries suffered by the victimthe greater the injury, the more likely the exclusion. Thus this exclusion, as applied in the factual context of the case at bar, focuses upon the victim of the accident in the same way as the family exclusion which was found to violate public policy in Wiscomb. And, as in Wiscomb, this "exclusion far exceeds the evil which it is designed to protect against" (Wiscomb, 97 Wash.2d at 210, 643 P.2d 441), i.e., operating a motor vehicle in a manner unique to the commission of a felony.
In contrast to Wiscomb, which invalidated a "family members" exclusion clause, other Washington cases which have considered insurance exclusion clauses in light of the FRA have held that there has been no violation of public policy. See, e.g., Progressive Cas. Ins. Co. v. Jester, 102 Wash.2d 78, 683 P.2d 180 (1984); PEMCO v. Hertz Corp., 59 Wash. App. 641, 800 P.2d 831 (1990); Greer v. Northwestern Nat'l Ins. Co., 36 Wash.App. 330, 674 P.2d 1257 (1984), aff'd in part, rev'd in part on other grounds by 109 Wash.2d 191, 743 P.2d 1244 (1987). These cases have upheld exclusion clauses based on two broad rationales: the exclusion clause was specifically bargained for or increased the risk to the insurer.
*33 A. Exclusions which are bargained for.
An exclusion which is specifically bargained for will not violate the public policy of the FRA. In Jester, 102 Wash.2d 78, 683 P.2d 180, this court declined to strike down a provision in a motorcycle insurance policy which excluded liability coverage for claims made by passengers on the motorcycle as violating the public policy of the FRA. The rationale of this decision was that the coverage in question had been specifically rejected by the insured.
Jester is easily distinguishable from the case presently before us where there has been no argument that the exclusion was specifically bargained for, and there is no indication in the record that this is the case. Clerk's Papers at 333 (felony exclusion clause in insurance policy is in standard print which is used throughout the rest of the document).
B. Increased risk to the insurer.
Other cases have upheld exclusion clauses in insurance policies on the basis that the activity excluded increased the risk to the insurer. The principle underlying these cases was expressed in Eurick v. Pemco Ins. Co., 108 Wash.2d 338, 343-44, 738 P.2d 251 (1987), where we explained that "exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason."
The following types of clauses in automobile insurance policies have been determined by Washington courts not to violate public policy: exclusion of coverage when vehicle was used by anyone under the influence of alcohol (PEMCO, 59 Wash.App. 641, 800 P.2d 831); exclusion of coverage for passengers on motorcycle (e.g., Jester, 102 Wash.2d 78, 683 P.2d 180; Greer, 36 Wash.App. 330, 674 P.2d 1257); exclusion of coverage for drivers other than those named in the insurance policy (e.g., Planet Ins. Co. v. Wong, 74 Wash.App. 905, 877 P.2d 198 (1994)); exclusion of coverage for drivers under a certain age (e.g., Wong, 74 Wash.App. 905, 877 P.2d 198); exclusion of coverage for an unlicensed driver (Continental Cas. Co. v. Weaver, 48 Wash. App. 607, 739 P.2d 1192 (1987)); exclusion of coverage if the insured vehicle was taken out of a certain territorial area (Lovato v. Liberty Mut. Fire Ins. Co., 109 Wash.2d 43, 742 P.2d 1242 (1987)); and exclusion of motorcycle use for the purposes of an underinsured motorist clause in an automobile insurance policy (Eurick, 108 Wash.2d 338, 738 P.2d 251).
In each of these cases the activities excluded constitute an increased risk to the insurer, coverage for which would justify an increase in insurance premium. Many of these cases specifically discuss the increased risk. Greer, 36 Wash.App. at 342, 674 P.2d 1257 ("A myriad of additional risks and exposures [from carrying a passenger] are apparent to anyone familiar with the operation of motorcycles not the least of which is the fact that in any motorcycle accident the passenger is almost certainly going to be thrown violently from the vehicle.... Hence, the carrying of passengers on a motorcycle substantially increases the nature of the insurer's risks."); Wong, 74 Wash.App. at 911, 877 P.2d 198 ("[T]here is evidence in the record that where a driver who has not received prior authorization obtains custody of one of Thrifty's rental cars, there is an increased risk of theft, of the car not being returned, of the car being taken to an unauthorized locationwhich places the automobile at greater riskand of the car being used for unauthorized purposes."); Eurick, 108 Wash.2d at 344, 738 P.2d 251 ("Because motorcycles clearly represent an additional risk to the insurer [of an automobile], the exclusion is valid.").
The cases upholding exclusion clauses against public policy challenges are all distinguishable from the case at bar for at least two reasons. First, the exclusion clause in the case at bar operates retrospectively. Second, the exclusion clause in the case at bar strikes at the heart of the public policy of the FRA in a way that the other exclusion clauses do not.
1. Exclusion of "any felony" results in retrospective determination of risk to the insurer
This exclusion clause currently before the court pertains to no inherent and foreseeable *34 increased risk to the insurer: a determination of whether the felonies of vehicular homicide or vehicular assault have occurred cannot be made until after injuries to the victim have been assessed. This assessment must necessarily occur after an accident and cannot be made in advance, at the time the insurance policy is purchased. Insurance is by its nature prospective and not retrospective, as can be seen from the statutory definition of an insurance contract as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040 (emphasis added). See also State ex rel. Fishback v. Universal Serv. Agency, 87 Wash. 413, 424, 151 P. 768 (1915) (including as part of the definition of an insurance contract "a hazard or peril insured against whereby the insured or his beneficiary may suffer loss or injury" (emphasis added)); 1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on Insurance, 2D, § 1.3, at 13 (1996) ("An insurance agreement is an aleatory contract. Aleatory is derived from the Latin `alea' meaning dice. An insurer's promise is conditioned upon the occurrence of an uncertain, fortuitous event, that is, a chance event."). Insurable events are contingent and uncertain precisely because they are future and not past events. Thus the present case is distinguishable because the exclusion clause operates, at least with respect to felony homicide and felony assault, in a retroactive manner. In other words, the exclusion is only operable after the injuries of the victims have been assessed as severe enough to warrant a felony conviction.
2. The felony exclusion is not linked to the insurer's risk, but to the victim's injuries
The felony exclusion clause in the instant case strikes at the heart of the public policy of the FRA and the mandatory liability insurance act in a way that the clauses in cases where exclusions have been upheld do not. The objective of obtaining insurance coverage is to "protect the public from the ravages of the negligent and reckless driver." Touchette v. Northwestern Mut. Ins. Co., 80 Wash.2d 327, 332, 494 P.2d 479 (1972). This is reflected in the policy of the FRA and the mandatory liability insurance act.
But this felony exclusion has the potential to release an insurance company from liability solely because injuries to an accident victim are severe enough to warrant felony proceedings against the accused for vehicular homicide or vehicular assault. This is because the crimes of vehicular homicide and vehicular assault are predicated upon injuries to the victim. Vehicular homicide occurs "[w]hen the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person" if the driver is legally intoxicated, reckless or driving "[w]ith disregard for the safety of others." RCW 46.61.520(1)(c). Vehicular assault occurs when "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body" (serious bodily injury) is proximately caused by reckless driving or driving while legally intoxicated. RCW 46.61.522(2).
Reckless driving does not always result in death or serious injury; even when reckless driving results in an accident, there may be no injuries or those injured may have only minor injuries. Under RCW 46.61.500 reckless driving is a gross misdemeanor and the Leader National insurance policy felony exclusion would not apply. Similarly, driving while under the influence does not always result in death or serious injury to victims and the crime is a gross misdemeanor (RCW 46.61.502) to which the felony exclusion in the Leader National policy also does not apply. Therefore, the feature that distinguishes vehicular homicide or vehicular assault from reckless driving or driving under the influence is the extent of the injuries of the victims. As a result, the felony exclusion in the Leader National insurance policy which excludes coverage for victims of vehicular homicide or vehicular assault but does not exclude coverage for victims of reckless driving or driving under the influence, operates to exclude coverage solely because of the extent of the injuries to the victims.
When viewed in light of the policy of the FRA and the mandatory liability insurance *35 act to compensate victims, the result of this exclusion is perverse: victims who are less seriously injured would be covered, but those who are badly injured or killed would be excluded from coverage. But it is precisely in cases where victims are badly injured or killed where the public policy that victims of negligent driving should be compensated is most applicable. The overly broad focus of the exclusion in Leader National's insurance policy on all felonies, including felonies predicated on the injuries of accident victims, therefore strikes at the heart of the FRA's public policy. Cf. Wiscomb, 97 Wash.2d at 210, 643 P.2d 441 ("[T]he exclusion far exceeds the evil which it is designed to protect against....").
Leader National argues that "[r]egardless of the severity of the injuries an insurer's risk is increased by the use of the insured vehicle in the commission of a felony." Reply to Br. of Amicus Curiae at 16. Although this argument has emotional appeal (commission of a "felony" sounds dangerous and risky), it misses the crucial point: it fails to identify why participation in the broad group of activities defined by law as felonies inherently involves risk to the insurer. In essence, the phrase "any felony" encompasses a wide range of activities and is overbroad. As Leader National has itself conceded, a "felony per se may not affect the ability to drive." Resp't/Cross-Appellant's Reply Br. at 8. In the present case, the quality of driving (and hence risk to the insurer) is not the issue on which conviction of vehicular homicide and vehicular assault turns. Rather, the distinguishing element of the felonies of vehicular homicide and vehicular assault is the extent of the victim's injuries. For example, reckless driving which does not result in severe injury may be no less "reckless" than reckless driving which does result in severe injury. The risky behavior is the same in both instances (and hence the risk to the insurer is the same), yet because of the injuries of the victim, the latter can produce a conviction for felony vehicular assault. In these circumstances exclusion of coverage because of the felony conviction is inherently and exclusively based upon the injuries to the victim and, following Wiscomb, clearly violates public policy.
Arguing the court should find the felony exclusion clause to be consistent with the public policy of the FRA, Leader National relies heavily on the Court of Appeals, Division One, case PEMCO v. Hertz Corp., 59 Wash.App. 641, 800 P.2d 831 (1990). In PEMCO the court upheld an insurance provision which excluded coverage for anyone who drove the vehicle while intoxicated. PEMCO is distinguishable because the exclusion in PEMCO was contained in the automatic insurance provisions of a car rental agreement (PEMCO, 59 Wash.App. at 642, 800 P.2d 831) to which the court in PEMCO specifically noted the FRA does not apply. PEMCO, 59 Wash.App. at 644, 800 P.2d 831 (citing Continental Cas. Co. v. Weaver, 48 Wash.App. 607, 613, 739 P.2d 1192 (1987)). PEMCO is therefore distinguishable from the case at bar, where the public policy as expressed by the FRA (and the mandatory liability insurance act) is applicable.

IV.

Conclusion
In conclusion, the case before the court is governed by application of the Wiscomb rule that exclusions which turn on victims and not on the risk to the insurer violate public policy. The broad felony exclusion at issue in the present case violates the Wiscomb rule because crimes such as vehicular homicide and vehicular assault are predicated upon the injuries sustained by the victim. Therefore, the Court of Appeals was correct in holding that the Leader exclusion violated public policy, and we remand to the trial court for further proceedings consistent with this opinion. The Mendozas shall recover their statutory costs on appeal.
SMITH, JOHNSON, ALEXANDER, IRELAND and BRIDGE, JJ., concur.
TALMADGE, J. (dissenting).
The majority holds Leader National Insurance's (Leader National) felony exclusion clause invalid as against public policy. I disagree. The felony exclusion clause is directly related to the increased risk an insurance company faces when a driver operates *36 an insured vehicle. It is also consistent with Washington public policy relating to drinking and driving and forbidding insurance of illegal conduct. The clause is not contrary to public policy.
The felony exclusion clause at issue reads:
This coverage does not apply to bodily injury or property damage if your covered auto is used in the commission of any felony, including theft of your covered auto.
Clerk's Papers at 88. Leader National argues the plain language of the felony exclusion clause precludes coverage in this case. At the time of the tragedy here, Rivera-Chavez had a BAC reading of .20, two and a half times the legal limit; he pleaded guilty to two felonies because he killed a person and injured another while driving intoxicated.
At the outset, I agree with the majority this exclusion is not ambiguous. We are correct in rejecting the Court of Appeals' holding that the exclusion applies only to intentional crimes. The insurance company could have excluded only intentional crimes, but did not. The language "any felony" must also include unintentional felonies.
I part company with the majority's discussion of public policy, however. The majority determines the felony exclusion clause is contrary to Washington's public policy favoring compensation for victims of road accidents, as evidenced by the financial responsibility act (FRA), chapter 46.29 RCW, and the mandatory liability insurance act, chapter 46.30 RCW. The majority's contention sweeps too broadly. If compensation for victims of road accidents were the only consideration, all exclusions would fail the majority's public policy test. For example, virtually all liability policies exclude coverage for the intentional conduct of the insured. Such an exclusion plainly diminishes coverage for the victims of the insured's conduct. But Leader National did not agree to pay for any and all injuries resulting from an auto accident Rivera-Chavez might cause. If Rivera-Chavez purposely ran over an enemy of his, there would be no coverage because Leader National and Rivera-Chavez appropriately agreed that "coverage does not apply to bodily injury caused intentionally by [Mr. Rivera-Chavez] or at [his] direction." Clerk's Papers at 4. Likewise, Leader National and Rivera-Chavez agreed there would be no coverage for injuries he might cause while driving feloniously.
It is well established that insurance companies may limit their liability unless the limitation is contrary to public policy. Bohme v. PEMCO Mut. Ins. Co., 127 Wash.2d 409, 417, 899 P.2d 787 (1995); Brown v. Snohomish County Physicians Corp., 120 Wash.2d 747, 753, 845 P.2d 334 (1993). In general, courts are reluctant to find an exclusion clause in an insurance policy is in violation of public policy. State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 481, 687 P.2d 1139 (1984). An exclusion in an automobile liability insurance policy obviously detracts from the coverage required by the FRA and chapter 46.30 RCW. As the New Jersey Supreme Court observed: "Logically, in order to give any meaning to [an] exclusion, it must be interpreted to exclude something that would otherwise be covered." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 698 A.2d 9, 18, 60 A.L.R. 5th 861 (1997). But an exclusion must still be evaluated to determine if it properly addresses only unusually risky behavior by the insured and if it carries out other significant public policy considerations.
A. Increased Risk
Insurance exclusions violate public policy if they are contrary to statute or if they "manifes[t] no relation to any increased risk faced by the insurer[.]" Eurick v. Pemco Ins. Co., 108 Wash.2d 338, 343, 738 P.2d 251 (1987). On the other hand, exclusion clauses "[do] not violate public policy where the clause directly relates to an increased risk on the part of the insurer." Planet Ins. Co. v. Wong, 74 Wash.App. 905, 910, 877 P.2d 198, review denied, 125 Wash.2d 1008, 889 P.2d 498 (1994). Insurers can permissibly limit coverage so long as the "nature of [the insurance company's] risk is altered by factors not contemplated by it in computing premiums[.]" Mutual of Enumclaw Ins. Co. v. Wiscomb, 97 Wash.2d 203, 209, 643 P.2d 441 (1982); see also Grange Ins. Ass'n v. *37 MacKenzie, 103 Wash.2d 708, 712, 694 P.2d 1087 (1985). Washington courts have repeatedly enforced exclusionary clauses against claims such clauses violated public policy when the clauses excluded coverage based upon an increased risk resulting from the driver's use of the vehicle. Greer v. Northwestern Nat'l Ins. Co., 36 Wash.App. 330, 342, 674 P.2d 1257 (1984) ("the carrying of passengers on a motorcycle substantially increases the nature of the insurer's risks."), aff'd in part, rev'd in part, 109 Wash.2d 191, 743 P.2d 1244 (1987); Public Employees Mut. Ins. Co. v. Hertz Corp., 59 Wash.App. 641, 644, 800 P.2d 831 (1990) (use of a vehicle while intoxicated constitutes an increased risk to the insurer), review denied, 116 Wash.2d 1013, 807 P.2d 884 (1991); Planet Ins., 74 Wash.App. at 911, 877 P.2d 198 (use of a vehicle by an unauthorized and underage driver altered the nature of the insurer's risk).
The question, then, for the present case, is whether Leader National's felony exclusion is related to any activity by the insured that increases risk to the insurer beyond the expected coverage of a traditional automobile liability policy. The majority opinion, by referring to only a portion of the wording in the vehicular homicide and vehicular assault statutes, concludes there is no increased risk. The better and more traditional approach to legal analysis, however, is to look at all the words in a statute that bear on a case at bar.
The vehicular homicide statute, RCW 46.61.520, reads in its entirety:
(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
(b) In a reckless manner; or
(c) With disregard for the safety of others.
(2) Vehicular homicide is a class A felony punishable under chapter 9A.20 RCW[.]
While there must be a death in order for the charge of vehicular homicide to lie, the crime also contains three additional elements: driving under the influence (DUI), driving in a reckless manner, or driving with disregard for the safety of others. The "to convict" instruction for vehicular homicide in WPIC 90.02 requires a finding of at least one of those three elements.[1]
Each of these three elements relates to the conduct of the insured, not to the victim. There can be no vehicular homicide, and no application of the felony exclusion, unless a jury finds beyond a reasonable doubt the insured was driving under the influence, driving in a reckless manner, or driving with disregard for the safety of others. Such conduct in each of these three instances involves a higher risk for the insurance company, a risk the company here chose not to undertake. The Court of Appeals correctly recognized the felony exclusion clause is aimed at "the risky behavior of the driver[.]" Mendoza v. Rivera-Chavez, 88 Wash.App. 261, 270, 945 P.2d 232 (1997).
DUI is defined by the applicable statute, so there is no question as to its meaning. Driving in a reckless manner or driving with disregard for the safety of others is defined by WPIC 90.05, and is based on our case law:
[To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences.][[2]]
*38 [Disregard for the safety of others means an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than ordinary negligence. Ordinary negligence is the failure to exercise ordinary care. Ordinary negligence is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances. Ordinary negligence in operating a motor vehicle does not render a person guilty of vehicular homicide.]
(Emphasis added.) Thus, ordinary negligence cannot result in a conviction for vehicular homicide. Only enhanced risky driving can. It is, therefore, precisely this enhanced risky driving the felony exclusion clause in the Leader National policy addresses. The majority opinion is thus dead wrong and misleading when it says, "The exclusion at issue in this case is not based on the conduct of the driver but on the injuries suffered by the victim." Majority op. at 32.[3] If Rivera-Chavez had been driving negligently and caused an accident that resulted in the same death and injuries, there would be coverage. But because by driving under the influence of alcohol he increased the risk to Leader National, there is no coverage. The victims and the injuries are the same in both examples. What differs is the riskiness of Rivera-Chavez's driving.
Indeed, an exclusion in an automobile liability policy based only on the three predicate behaviors of the insured referenced in RCW 46.61.520 would be enforceable because such conduct enhances the insurer's risk. For example, an exclusion barring coverage if the insured was operating a vehicle while intoxicated would be enforceable whether the harm engendered by the insured was property damage, bodily injury, or death precisely because Washington courts long have recognized that operating a vehicle while intoxicated increases the risk faced by the insurer. Hertz Corp., 59 Wash.App. 641, 800 P.2d 831. In Hertz Corp., the Court of Appeals held that the use of a vehicle by a driver who is intoxicated alters the nature of the insurer's risk. Id. at 645, 800 P.2d 831. According to the court, the insurer's risk increased when an unlicensed driver operated the vehicle. Id. at 644, 800 P.2d 831 (citing Continental Cas. Co. v. Weaver, 48 Wash.App. 607, 613, 739 P.2d 1192 (1987)). The court enforced the exclusion clause, holding that the use of the vehicle while intoxicated "directly relate[d] to an increased risk on the part of the insurer." Id. at 644, 800 P.2d 831. In Hertz Corp., as in this case, the exclusion clause operated to deny recovery to the victims of the road accident, but the clause did not violate public policy because of the increased risk to the insurer from the insured driver's *39 use of the vehicle.[4] Arguably, under the majority's analysis, the exclusion in Hertz Corp. would also violate public policy.
Similarly, reckless driving[5]operating a vehicle in a rash or heedless manner, indifferent to the consequences of the vehicle's operationor operating a vehicle with disregard to the safety of others enhances the risk to the insurer. The likelihood of property damage or bodily injury under these circumstances is obviously increased beyond the normal risk of operating a motor vehicle on Washington's streets and highways.
Leader National's agreement with its insured is clear: "We will pay damages for bodily injury or property damage for which you become legally responsible because of an auto accident." Supplemental Br. of Pet'r, App. E-1, at 5. This means if Rivera-Chavez drives his car in a way that causes the death of somebody, Leader National will pay the resulting damages. It is the fundamental purpose of automobile insurance to indemnify the insured for injury he or she may cause to another.
But Leader National permissibly limited its risk by contracting not to cover injuries arising from increasingly risky behavior by Rivera-Chavez that exposed Leader National to greater potential for covering damages. If Rivera-Chavez's fault is simple negligence, Leader National will cover any damages he causes. If Rivera-Chavez's fault stems from his intentional activity, Leader National will not cover any damages he causes. Finally, if Rivera-Chavez's fault is "driving in a reckless manner" or "with disregard of the safety of others," resulting in someone's death, so that he is guilty of vehicular homicide, Leader National will not cover any damages he causes. In each case, the coverage focus is on Rivera-Chavez's behavior, not potential victims. Thus, the felony exclusion clause passes muster under Wiscomb.
Other jurisdictions have enforced exclusions for use of a vehicle in criminal activity. 8 LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 121:92, at 121 (1997). Additionally, such jurisdictions have held that clauses excluding coverage for losses caused while the vehicle is engaged in unlawful flight from police are not contrary to public policy. Id. In Smith v. State Farm Mut. Auto. Ins. Co., 122 Ga.App. 430, 177 S.E.2d 195, 197 (1970), a Georgia court enforced a clause excluding coverage for injuries arising from or caused by attempts to resist or flee from arrest. The exclusion clause prevented a state patrol officer, who collided with another vehicle while in pursuit of a fleeing vehicle, from recovering from the fleeing driver's insurance carrier. Id. at 199. Courts have also enforced clauses excluding recovery for damages incurred while the vehicle is used in illicit trade or transportation. Foremost County Mut. Ins. Co. v. North Star Dodge, Inc., 542 S.W.2d 270 (Tex.Civ. App.1976).
The foregoing seems intuitive and straightforward. Nevertheless, the majority opinion, following the Court of Appeals, applies a peculiar and inverted spin to its analysis to conclude the focus of the felony exclusion is on the victim, rather than the insured's behavior. The crux of the majority's argument is that reckless driving without injury is not a felony, while reckless driving with injury is. Therefore, the majority concludes, the felony exclusion eliminates coverage for injured victims, even though the driver's conduct is the same in both casesrecklessand the risk to the insurer is the same. The majority opinion fails to address the risk of the insured's behavior, which is the crux of Wiscomb.
*40 Vehicular homicide, exposing the insurer to potential wrongful death damages, and vehicular assault, exposing the insurer to potential damages for personal injuries, create enormous risks of loss for insurers. They may, of course, choose to underwrite such risks and reflect the cost for doing so in the premiums charged to the insureds. Leader National, in this case, has chosen not to do so. Neither the Legislature nor Washington's Insurance Commissioner has required insurance companies to do so. While it is our historic function to scrutinize insurance contracts for oppressive, hidden, or ambiguous language because they are usually contracts of adhesion, it is not our function to dictate to insurers what coverages they must provide.
B. Public Policy
While sympathy for Rivera-Chavez's victims may animate a wish for coverage, the majority opinion fails to consider other public policy goals at play in this case besides the FRA and chapter 46.30 RCW.
Justice Benjamin Cardozo long ago set forth "the fundamental principle that no one shall be permitted to take advantage of his own wrong." Messersmith v. American Fidelity Co., 232 N.Y. 161, 165, 133 N.E. 432, 433, 19 A.L.R. 876 (1921). Originating perhaps from Justice Cardozo's pronouncement is the pervasive body of law holding it "to be contrary to public policy to insure against liability arising directly against the insured from intentional or willful wrongs, including the results and penalties of the insured's own criminal acts." 7 LEE R. RUSS & THOMAS S. SEGALLA, COUCH ON INSURANCE 3D § 101:22, at 101-79 to 101-81 (1997) (citing numerous cases; footnotes omitted). "In general, insurance to indemnify insured against his own violation of law is void as against public policy." 44 C.J.S. Insurance § 288b, at 540 (1993). "[C]riminal ... conduct may be held `uninsurable' as a matter of public policy, regardless of whether such conduct is excluded by the contract language." COUCH, supra, § 103:23, at 103-50. Accord Agora Syndicate, Inc. v. Levin, 977 F.Supp. 713, 716 (E.D.Pa.1997) ("It is well settled that Pennsylvania's public policy prohibits insurance coverage for intentional torts or criminal acts."); Horace Mann Ins. Co. v. Fore, 785 F.Supp. 947, 949 (M.D.Ala.1992) ("Alabama law is unambiguous on the point that nothing requires an insurer to indemnify a third party for the insured's criminal acts."); Herrman v. Folkerts, 202 Kan. 116, 446 P.2d 834, 837 (1968) ("It is generally held that an insurance policy is void as against public policy if its intent is to indemnify the insured against liability for his criminal acts."); Landry v. Leonard, 720 A.2d 907, 909 (Me.1998) ("The general rule is that it is against public policy for insurance to indemnify an insured against his own criminal acts."); Litrenta v. Republic Ins., 245 A.D.2d 344, 665 N.Y.S.2d 679, 680 (N.Y.A.D.1997) ("In general, it is contrary to public policy to insure against liability arising directly against an insured from his violation of a criminal statute."); Graham v. James F. Jackson Assocs., Inc., 84 N.C.App. 427, 352 S.E.2d 878, 881 (1987) ("It is a general rule that an insurance policy is void as against public policy if its intent is to indemnify the insured against liability for his own criminal acts.").
This view is also true under Washington law. The Court of Appeals said as obiter dictum in Queen City Farms, Inc. v. Central Nat'l Ins. Co., 64 Wash.App. 838, 862 n. 15, 827 P.2d 1024 (1992), "`It has long been against public policy to allow a person to purchase insurance for his immoral, criminal or fraudulent acts,'" (citation omitted) but we have never held as much.[6] I am confident, however, we will adopt the principle once the question is squarely before us.
Washington courts have consistently enforced broad felony exclusion clauses in the homeowners' insurance context. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 932 P.2d 1244 (1997); Allstate Ins. Co. v. Raynor, 93 Wash.App. 484, 969 P.2d 510, review granted, 139 Wash.2d 1001, 989 P.2d 1136 (1999); see also Cary v. Allstate Ins. Co., 130 Wash.2d 335, 922 P.2d 1335 (1996). In Peasley, a criminal act exclusion clause in a homeowners' insurance policy precluded coverage *41 for injuries sustained by a guest who was shot by the homeowner. Peasley, 131 Wash.2d at 423, 932 P.2d 1244. We rejected the guest's argument that such a clause violated public policy.[7] Rather than forcing the insurance company to indemnify the homeowner for his criminal act, we enforced the exclusion clause. Peasley lends support for the proposition that, in general, insurers need not provide coverage for losses caused by the criminal acts of their insureds.
The Court of Appeals recently enforced a homeowners' insurance policy which excluded coverage for injuries resulting from "`the intentional or criminal acts of an insured person[.]'" Raynor, 93 Wash.App. at 492, 969 P.2d 510. In Raynor, a homeowner shot and killed a neighbor woman and her child. Id. at 490, 969 P.2d 510. The homeowner argued his homeowner's insurance policy covered any liability arising from the incident. The Court of Appeals held the exclusion clause applied, noting the policy's language was clear, and an average purchaser of insurance would understand the homeowner's actions would be excluded criminal acts. Id. at 495, 969 P.2d 510. See also Barker v. California-Western States Life Ins. Co., 252 Cal. App.2d 768, 776, 61 Cal.Rptr. 595 (1967), cert. denied, 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968) (concluding felony exclusion clause in an insurance policy is not contrary to public policy); James v. Louisiana Laborers Health & Welfare Fund, 29 F.3d 1029 (5th Cir.1994) (upholding provision in health insurance plan excluding coverage for expenses incurred in the course or commission of a felony); Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust, 901 F.2d 1369, 1370 (7th Cir.1990) (because drunk driving is illegal activity under Illinois law, insured not able to recover for the injuries he sustained in a drunk driving accident).
Rivera-Chavez benefits if there is coverage for his felonious driving. If his insurance company pays the damages to the victims, Rivera-Chavez avoids a judgment against him for that amount. In the majority's obsessive focus on the salutary effect of liability insurance on victims, the majority overlooks the fact most people buy insurance not to protect those they may injure, but to avoid having to pay what might be large damage awards stemming from their breach of their general duty of care to avoid harm to others. Fiscal prudence compels people to buy insurance, not altruistic desires to protect potential victims.
Washington's public policy on drinking and driving is also relevant because one of the elements of vehicular homicide and vehicular assault may be driving under the influence. For instance, we declared the purposes of the implied consent law (RCW 46.20.308) to be:
(1) to discourage individuals from driving an automobile while under the influence of intoxicants, (2) to remove the driving privileges from those individuals disposed to driving while inebriated, and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.
Nowell v. Department of Motor Vehicles, 83 Wash.2d 121, 124, 516 P.2d 205 (1973). See also RCW 4.24.420 (barring civil recovery by person committing felony); RCW 5.40.060 (barring civil recovery by intoxicated person whose fault was 50 percent or greater). To the extent persons believe they have liability insurance to protect them against the effects of their hazardous, indeed felonious, behavior, the majority's view gives them consolation. They may feel more free to drink and drive, knowing the majority's narrow conception of public policy will give them freedom from any worry about the financial repercussions of their egregiously antisocial behavior. "The general rule prohibiting insurance against liability for criminal acts advances a legitimate public policy interest against relieving a wrongdoer from responsibility for his own wilful and wrongful act, in order that *42 the commission of such acts not be encouraged." Graham, 352 S.E.2d at 881. Accord St. Paul Fire & Marine Ins. Co. v. Jacobson, 826 F.Supp. 155, 163 (E.D.Va.1993) ("permitting coverage in certain circumstances will encourage insureds to engage in intentional misconduct"). The specter of huge damage awards that could burden an individual for many years acts as a deterrent to felonious driving. Insurance indemnification for felonious driving detracts from that deterrent. Public policy militates against relieving persons of their financial responsibility for felonious driving; as a matter of public policy, Rivera-Chavez should not benefit by escaping personal financial responsibility for his felonious driving.
In summary, the public policy supporting compensation for accident victims cannot control here because it proves too much. Every coverage exclusion is contrary to that policy. Moreover, that public policy is not the only public policy at issue here. Felonious drivers should not benefit from insurance coverage, and it is contrary to public policy to encourage drinking and driving or felonious driving by permitting insurers to indemnify such drivers.

CONCLUSION
The majority opinion devises a peculiar argument to conclude the felony exclusion clause in the Leader National policy focuses on victims. It plainly does not. In this case, given the involvement of our statutes on reckless driving and vehicular homicide and assault, it is evident the felony exclusion clause relates solely to the driving conduct of the insured. Leader National has decided not to underwrite driving behavior that transcends negligence and causes injury to persons or property. Neither Washington law nor public policy is to the contrary.
In this case, Rivera-Chavez pleaded guilty to two felonies, vehicular homicide and vehicular assault, for killing and injuring people on the road while he was drunk. Under these circumstances, there can be no question Rivera-Chavez was using his vehicle in the commission of a felony when the accident occurred. Under the clear and unambiguous language of the insurance contract, Leader National is not required to indemnify Rivera-Chavez for the damage he caused. I would reverse the Court of Appeals' decision and affirm the trial court's grant of summary judgment to Leader National.
GUY, C.J. and MADSEN, J., concur.
NOTES
[1] WPIC 90.02 states in pertinent part:

To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:
. . .
(3) That at the time of causing the injury, the defendant was operating the motor vehicle
(a) while under the influence of [intoxicating liquor] [or] [drugs], or
(b) in a reckless manner, or
(c) with disregard for the safety of others;
. . . .
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
[2] This definition derives from our case law. See State v. Bowman, 57 Wash.2d 266, 270-71, 356 P.2d 999 (1960); State v. Partridge, 47 Wash.2d 640, 645-46, 289 P.2d 702 (1955), quoted with approval by State v. Eike, 72 Wash.2d 760, 764, 435 P.2d 680 (1967).
[3] The felony exclusion clause depends on the behavior of the insured, the charging decision of the county prosecuting attorney, and on the outcome of the trial of the insured. Not every automobile accident resulting in death leads to a charge of vehicular homicide or assault. The insured may have been merely negligent, or not at fault at all. The insured driver may be civilly liable to the injured party. Indeed, that is what automobile insurance is all about, covering an insured for accidental behavior resulting in injury to persons or property. But in order for a criminal charge to lie, the insured's conduct must have been so egregiously unlawful as to induce the county prosecutor to file charges. Thus, it is the conduct of the insured resulting in the filing of a felony charge and subsequent conviction for vehicular homicide or vehicular assault, not solely the death or injury of the third party, that activates the felony exclusion clause.

I recognize there may be controversy whether actual conviction of a felony is always necessary for a felony exclusion clause to apply. See, e.g., Allstate Ins. Co. v. Raynor, 93 Wash.App. 484, 496, 969 P.2d 510 (holding for criminal acts exclusion in homeowner's policy "neither a criminal charge nor a conviction is prerequisite to operation of the policy's exclusion of coverage for criminal acts."), review granted, 139 Wash.2d 1001, 989 P.2d 1136 (1999). For instance, if Rivera-Chavez himself had died in the accident he caused, he obviously could not have been charged, tried, and convicted of vehicular homicide. Nevertheless, if the insurer could show Rivera-Chavez's conduct in causing the accident was felonious, the felony exclusion might be applicable. My discussion here is limited to the facts of this case, where Rivera-Chavez pleaded guilty to both vehicular homicide and vehicular assault, and I do not consider any other situations concerning the applicability of a felony exclusion clause.
[4] Hertz Corp. could be distinguished on the grounds that the financial responsibility act, RCW 46.29, does not apply to car rental agreements. However, while it is true that the public policy at issue here did not apply in Hertz, the case still stands for the proposition that operating a vehicle while intoxicated alters the nature of the insurer's risk.
[5] Reckless driving is also a crime. RCW 46.61.500(1) states: "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving. Violation of the provisions of this section is a gross misdemeanor punishable by imprisonment of not more than one year and by a fine of not more than five thousand dollars." Because the crime of reckless driving is only a gross misdemeanor, Leader National's policy does not exclude it.
[6] Justice Holcomb cited Justice Cardozo's principle in a dissent. National Sur. Co. v. Petersen, 155 Wash. 113, 119, 283 P. 668 (1930) (Holcomb, J., dissenting).
[7] In Peasley, 131 Wash.2d 420, 932 P.2d 1244, we declined to apply the public policy of compensating innocent victims asserting that this policy does not apply outside the context of automobile insurance. "`[W]e do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.'" Id. at 432, 932 P.2d 1244 (quoting State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 483, 687 P.2d 1139 (1984)).